### JEREMIAH MEAD *et a. vs.* JOHN HARVEY *et a.*

Where in the extent of an execution upon real estate, the appraisers certified on the execution, that they " set off the land in full satisfaction of the execution " with officer's fees and incidental charges," and it in no other way appeared at what sum the real estate was appraised; it was held, that nothing passed by the extent.

This was a writ of entry, in which the demandants counted upon their own seisin of three parcels of land in New-Market. The cause was tried here at September term, 1821, upon the general issue, and a verdict taken for the demandants, subject to the opinion of the court upon the following case.

It was admitted, that one *Benjamin Mead,* under whom both parties claimed the land, was once seized in fee of the demanded premises. It appeared in evidence, that the said *Benjamin Mead* died in the year 1807 ; that *Sarah Mead,* his widow, was appointed executrix of his last will ; that one *Philip Chesley,* having commenced an action of covenant broken against the said *Sarah,* executrix as aforesaid, upon a deed of the said *Benjamin Mead,* at September term of the superior court in the county of Strafford, 1818, recovered judgment against the said *Sarah,* executrix as aforesaid, for the sum of $439 56 damage, and $93 49, costs of suit, and having sued out execution, the 18th July, 1819, caused the same to be extended upon the demanded premises, as the estate of the said *Benjamin* deceased.

In the extent of *Chesley's* execution, the certificate of the appraisers was as follows : " Pursuant and agreeably to the " above appointment and notice, and after particular exam- " ination, we have faithfully and impartially appraised cer- " tain lands and buildings situate in New-Market, &c. (here " three parcels of real estate were described,) with all the " privileges and appurtenances belonging to each of the pie- " ces above described, the same having been shown us, &c.

Mead et al.
*vs.*
Harvey et al.

" which property we hereby set off to said *P. C.* to hold to " him and his heirs and assigns in full satisfaction of this ex- " ecution, with officer's fees and incidental charges of levying " the same." And it in no other way appeared by the extent at what sum the said real estate was appraised.

On the 23d July, 1819, *Philip Chesley*, by deed, conveyed the demanded premises to the demandants.

*Cutts* and *Mason*, for the demandants.

*French* and *I. Bartlett*, for the tenants.

RICHARDSON, C. J. It is contended on the part of the tenants, that the extent, under which the demandants claim the land in question, is invalid, because it does not appear in the sheriff's return at what sum the appraisers valued the land. In order to settle the question, which this exception presents, we must resort to our statutes. It is not to be doubted, that when an execution is extended upon land, the appraisers are faithfully and impartially to estimate the value of the land in money, and that it is to be applied according to that value to the satisfaction of the execution.— This is apparent from the enacted form of the execution itself. " We command you, therefore, that of the goods, chat- " tels, or lands of the said *D. H.* you cause to be paid and " satisfied unto the said *R. Y. at the value thereof in money,* " the aforesaid sums," &c.(1) When goods or chattels are taken to satisfy an execution, it is provided by statute, that they shall be sold, " and the money arising upon such sale " shall be applied to the paying of the charges, and to the " satisfying of the execution."(2) The statute provides, " that " the manner of levying executions on real estate shall be as " follows: The creditor shall deliver his execution to the " sheriff of the county, or his deputy, where the debtor's " land and tenements lie, who shall cause three appraisers " to be chosen, one by the creditor or creditors, another by " the debtor or debtors, if he or they so please, and the " third by the sheriff, which appraisers shall be reputable " freeholders and residents in said county. And in all cases " where the debtor shall, on due notice, neglect or refuse to " choose an appraiser, the officer shall appoint one for such

(1) 1 N. H. Laws, 93.

(2) 1 N. H. Laws, 183.

Mead et a.
*vs.*
Harvey et a.

" debtor or debtors, and the said appraisers, having taken
" their oaths before any justice of the peace, faithfully and
" impartially to appraise such lands and tenements as shall
" then and there be shown them, as the estate of such debt-
" or or debtors, shall appraise the same, to satisfy the execu-
" tion with the officer's fees, and set off such lands and tene-
" ments by metes and bounds. And the sheriff shall there-
" upon deliver possession and seisin thereof to such creditor
" or creditors."

Under this statute, it is the duty of the appraisers to set
off the land by metes and bounds, and to estimate its value
in money. The sheriff then delivers to the creditor
seisin and possession of the land, and the execution thus be-
comes satisfied to the amount of the appraised value of the
land.

In the extent, under which the demandants claim the land,
the appraisers say, " we have faithfully and impartially ap-
" praised certain lands, &c. hereafter described, &c. which
" property we hereby set off to said *P. C.* to hold to him,
" &c. in full satisfaction of this execution, with officer's fees
" and incidental charges of levying the same." Now the
objection to this extent is, that, although the appraisers may
have faithfully and impartially appraised the land, yet for
aught that appears, the appraised value may have been much
above the amount of the execution and charges of extending
it, and the question is, whether we are at liberty to presume
that the appraisers estimated the land at the amount of the
execution and charges? It may be probable, that they did
so estimate the land, but in a case of this kind, are courts at
liberty to say it was so done, because it is probable it was so
done? Land was not at the common law liable to execution.
But our statute has made every man's estate both real and
personal liable to the payment of his debts, and for that
purpose he may be divested of his inheritance. It has how-
ever always been held, that in thus taking from an individual
his land, the statute must be substantially pursued. In the
case of *Sewall et a. vs. Wallace et a.* in the county of Hills-
borough, December term, 1815, the sheriff had returned in

Mead et a.
*vs.*
Harvey et a.

a certain extent, as follows, with regard to the choice of appraisers : " *J. G.* chosen by the plaintiff's attorney, *J. K.* " chosen by myself, and *S. K.* chosen by myself, the debtor " neglecting to choose a man." It was objected, that it did not appear that notice was given to the debtor to choose an appraiser. To this it was answered, that the word " neglect" imported notice, that in common parlance a man was never said to neglect what he had had no opportunity to do. But the court decided, that no title could be acquired by the extent, and a case was cited in which it had been before so decided. 2 *Mass. Rep.* 154, *Eddy vs. Knap,* S. P. —8 *ditto* 284, S. P.

(1) 9 Mass.
Rep. 242.

In the case of *Davis vs. Maynard,*(1) the sheriff, having sold a right in equity to redeem land upon execution, made return as follows : " Worcester, ss—November 7, 1808. " After advertising as the law directs, I this day sold at " public auction," &c. It was objected, that the return was insufficient, because it did not specify how the right had been advertised, and of that opinion were the court.

(2) 14 Mass.
Rep. 20.

In the case of *Williams vs. Amory,*(2) it was held, where the sheriff had neglected in his return of an extent to state, that the appraisers were " discreet and disinterested free- " holders," that the extent was void ; and the court lay it down as a rule of law, that " a statute title must always be " perfect, that is, every thing which the law deems essen- " tial to the transfer of the property from one to another, " must appear on record to have been done."

Nor are the grounds upon which these decisions rest, at all unsatisfactory. When the lands of one individual are taken from him and transferred to another by the sheriff under the authority of a statute, it ought to appear by the sheriff's return, that the statute has been pursued. Nothing ought to be left to conjecture. Every fact essential to a good title ought to be expressly stated or necessarily implied in what is stated in the return. The validity of an extent may then be easily determined by comparing the return of the sheriff with the requisitions of the statute. But a departure from

this rule may eventually lead to great uncertainty in our land titles and to endless litigation.

In the present case, an essential fact is entirely omitted in the sheriff's return. It is neither expressly stated, nor is it to be necessarily inferred from any thing that is stated, at what sum the appraisers estimated the value of the land. How can we then say, that in this case the land was applied to the satisfaction of the execution, according to its value in money, as the law requires? To pronounce this extent valid, then, is in fact saying, that a man may be deprived of his inheritance, under color of law, in a manner not warranted by the law of the land.

*Verdict set aside, and demandants nonsuit.*