## JOHN L. RIX *versus* JESSE JOHNSON.

In an extent, the line round the land was described as " running to a stake at the river, thence on the river, N. 6° 40' W. twenty three perches, thence N. 39° 50' W. thirty three perches, thence N. 20° 20' W. thirty five perches and eight links, to a stake by the river ;" it was held that this description made the river a boundary

In an extent the appraisers were described only as " indifferent, discreet men, freeholders of said county." It was held that these terms did not show that the appraisers were resident in the county, and that nothing passed by the extent.

THIS was an action of trespass for breaking and entering the plaintiff's close, in Haverhill, in this county, and was tried here upon the general issue, at May term, 1830, and a verdict taken by consent, for the defendant, subject to the opinion of the court upon the following case.

Joseph Hutchins, on the 25th May, 1801, was seized of a tract of land in Haverhill, of which the *locus in quo* is parcel, lying adjoining to Connecticut river. And Jonathan Amory, having obtained a writ of execution against the said Hutchins, on the said 25th May, 1801, caused the same to be extended upon a parcel of the said tract, described in the sheriff's return as follows : " Beginning at &c. and running north, 56° 35' West, 94 rods, to a stake at the river ; thence on the river, north, 6° 40' west, 23 perches ; thence north, 39° 50' west, 33 perches ; thence north, 20° 20' west, 35 perches and 8 links, to a stake by the river ; thence, &c." At the time of the extent, the stakes mentioned in the return were erected, and the lines described were run. The stakes mentioned above were placed between the ridge of the river bank and the water, the southerly one about one rod from the water's edge, and the northerly one at the distance of eight or ten feet. The line upon the river, run and described as above, nearly coincided with the ridge of the bank, leaving sometimes more, and sometimes less land, overgrown with bushes, or covered with sand, between that line and the water. But, when the water in the river rises so as to reach the said said stakes, which occasionally happens, all the land west of that line is covered with water.

There has beed a gradual accession to the land, which lies between said line and the river, and which is the *locus in quo*, by alluvion, so that there is now between three and four acres.

Immediately after the extent, Amory entered, and by his tenants, occupied and improved the land to the river, until the 1st April, 1828, when he, by deed, conveyed the same to the plaintiff.

Joseph Hutchins died before the 30th October, 1815, leaving twelve children, of whom Solomon Hutchins and Jeremiah Hutchins were two.

On the said 30th October, 1815, Solomon Hutchins, by

deed, conveyed his right in the *locus in quo* to Jeremiah Hutchins, and on the 21st August, 1816, Jeremiah Hutchins, by deed, conveyed the same to the defendant and Haynes Johnson.

In the autumn of 1820, the defendant entered into the *locus in quo*, and erected a fence upon the line described in the said extent, between the stakes near the river ; and for two or three years subsequently, he entered and cut wood and grass.

In the return of the extent of Amory's execution upon the land, all that is stated as to the qualifications of the appraisers, is as follows : " I have caused the three parcels of land aforesaid, to be set off by metes and bounds, &c. and appraised by three indifferent, discreet men, freeholders of said county."

*Bell*, for the plaintiff.

*Nelson*, for the defendant.

The opinion of the court was delivered by

RICHARDSON, C. J.   The first question in this case, is, whether the *locus in quo* is within the limits of the premises described in Amory's extent ?   If those premises are bounded by the river, they embrace the *locus in quo*. But, if the line, described in the extent as running between the stakes, which are placed on the bank of the river, is the boundary, the *locus in quo* is not included in the extent.   The question to be settled, then, is, whether the line described in the extent, or the river, is to be considered as the true line of the premises, upon which the extent was made ?

We were at first inclined to think, that the return had not made the river a boundary.   For, although the stakes are described as *at* and *by* the river, and the line is said to run *on* the river, yet, taking the whole return together, we thought it not improbable that the words *at*, *by*, and *near* the river, might be intended to express nothing more, than " near the river."   And the circumstance, that the line along the river is so particularly described

by courses and distances, seemed to us to countenance such a construction of the return.

But there are circumstances and arguments, which upon a more attentive consideration of the case, seem to us much more decisive, to show that the river must have been intended as a boundary.

In the first place there are no monuments mentioned in the return, at the river, except in the lines that run to and from the river. In the description of the lines along the river, although the course changes twice, no bound is mentioned. If the intention was to make the river the boundary, this is all natural. But if the intention was to have the line upon the bank, it would have been according to the usual practice to have mentioned a monument at each change of the course.

In stating the course of the line along the river from the " stake at the river," it is expressly said to be " on the river ;" and although the words " on the river," are not repeated at each change of the course of the line, yet, as the line ends at a stake by the river, and in fact, nearly coincides through the whole extent with the ridge of the bank, the words " *on the river*" may perhaps be fairly enough considered as intended to apply to the line in its whole extent. If this be so, it is a strong argument to show that the river was intended as a boundary. And this argument is greatly strengthened by the consideration, that, if the river had not been intended as the boundary, it would have been natural to use the words " *on the bank*," instead of " *on the river*," in this place, which would have removed all doubt. If the line had been stated as running to a stake at the river, thence on the bank of the river, the courses and distances mentioned in the return, there would have been no pretence for saying that the river was a boundary. 4 Mason, 365—366 ; 17 Mass. Rep. 298.

In the case of *Alcock* v. *Little*, in this court, December term, 1815, in the county of Hillsborough, where a tract

Rix
*v.*
Johnson.

of land was described in a deed as beginning at Contoo-cook river, at the southwest corner of the bridge near Alcock's mills, by the road, and then the line round the land, which lay on the south side of the river, was particularly described, till it came to the river again, " thence on the southerly and easterly bank of said river to the bound first mentioned," the question was, whether the thread of the river, or the southerly bank, was the bound intended by the deed ? Smith, C. J. delivered it as the opinion of the court, that the southerly bank was the boundary.

If, in this case, the intention was, that the line should be upon the bank of the river, it was so easy to say so, that it seems to be a decisive argument against such an intention, that the bank of the river is no where mentioned in the return. The only monuments, to which any reference is made on that side of the land, are the river and stakes *at* and *by* the river. And there is nothing to weigh against this argument, except the circumstance, that the courses and distances of the line are particularly described. But it is a universal rule, that when a river, a known stream, a spring, or even a marked tree, is mentioned as a bound, it will control both course and distance. 7 Wheaton, 10, *Newton* v. *Prior* ; 6 ditto, 582, *Preston* v. *Bowman* ; 1 Cowen, 604, *Jackson* v. *Camp.*

In 6 Cowen, 547, a case in the superior court of North Carolina, is mentioned, which is very stronly in point, in favor of this plaintiff. The state of North Carolina granted to the defendant in that case, a tract of land, beginning at a hickory, standing not far from a river, and running thence down the river, a certain course and distance, but the course ran obliquely from the river, leaving between it and the river, a triangular piece of land. The question was, whether this piece of land passed by the grant ? The court held that the river was the boundary, because, " where a deed, patent, or

Rix
*v.*
Johnson.

grant, describes a boundary from a certain point down a river, creek, or the like, mentioning also course and distance, should the latter be found not to agree with the course of the river, creek, &c. it ought to be disregarded, and the river considered as the true boundary."

We are, on the whole, of opinion, that the river must be considered as the boundary, in this case, and that the *locus in quo* is within the limits of Amory's extent.

The next question to be determined is, whether any thing passed by the extent. The objection urged against it is, that it does not appear by the return, that the appraisers had the qualifications, which the statute requires. It has been decided, that an appraiser must have a freehold, and be a resident in the county, where the land to be appraised lies ; and a return that the appraisers were freeholders in the " county " was held not sufficient, because there was nothing in the terms, which imported, that they were resident in the county. 3 N. H. Rep. 85, *Simpson* v. *Coe.* We have attentively considered the language of the return in this case, and are unable to perceive any substantial difference between the meaning of the words *"freeholders of a county"* and *"freeholders in a county."* It does not seem to us, that to be a freeholder of a county by any means necessarily imports any thing more than to be a holder of real estate situate there. In the statute of February 8, 1791, prescribing the qualifications of town officers, it was provided, that overseers of the poor should be " freeholders and inhabitants of the town." Here it seems not to have been deemed enough to declare, that they should be freeholders of the town, but the word " inhabitants " is added. And we have no doubt that a man, who owns real estate in a county, may with strict propriety of language be said to be a freeholder of that county, although he may not reside in it. We are therefore of opinion, that the terms " freeholders of said county " do not import residents in the county. But it has been urged that the terms " discreet men, free-

holders of said county" do import residents in the county. It is said that we may supply the word "*and*" to connect the words "*men*" and "*freeholders*," that then the words "*of said county*" must be understood to refer as well to "*men*" as to "*freeholders*" and that "*men of said county*" must be understood to mean residents in the county.

We are inclined to think that "*men of a county*" would in common parlance be understood to mean residents. But the difficulty in this case is to give that construction to the language used in the return. It is understood to be conceded, that unless the word "and" can be supplied, the language used does not import any connexion between the words "*men*" and "*county.*" The return as it stands has a clear and definite meaning.

There is nothing in it, which can lead even to a conjecture, that any thing more was meant than what is clearly expressed. For if we supply the word "*and*" the return will then stand "three indifferent discreet men and freeholders of said county," leaving it uncertain whether discreet men of the county are intended. A man may be both a discreet man and a freeholder of a county and yet not reside in the county. In order to sustain this return, then, we must not only add a material word which may render that ambiguous in the return which is now plain and clear, but we must understand the return thus rendered ambiguous in the sense, for which the demandant's counsel contends. This we think cannot be done. We are bound to understand the return according to the natural import of the language used, and we are of opinion that this return, thus understood, cannot be supported.

*Judgment on the verdict.*