# STRAFFORD,

## DECEMBER TERM, A. D. 1839.

### WHITTIER vs. VARNEY.

Upon an attempt, by a creditor, to impeach a conveyance on the ground of fraud, he may give evidence that the debtor, about the same time, made transfers of other property, without consideration, to other persons, who conveyed the same soon after to the grantee, under circumstances indicative of fraudulent collusion between him and the debtor.

An execution issued against two persons, and was levied on the land of one. The sheriff returned that " the debtor within named" being notified, neglected and refused to appoint an appraiser, and that he therefore appointed one for him—*Held*, that the return was insufficient, because it did not appear that the debtor whose land was taken had refused, or been notified.

A defendant who holds by a conveyance which the jury have found to be fraudulent as to creditors, is not thereby precluded from insisting on an exception to the sufficiency of the extent under which the plaintiff, a creditor of the fraudulent grantor, claims title to the premises.

The return of an extent may be amended after it has been recorded.

If the return contain sufficient matter to indicate that in making the extent all the requisitions of the statute were probably complied with, an amendment may be made, notwithstanding any intervening interest of a subsequent purchaser or creditor.

But if the return contains nothing tending to show a compliance with some essential requisition of the statute, no amendment can be admitted to the prejudice of the rights of third persons, acquired by purchase or levy subsequent to the extent.

An amendment when made relates back to the time of the levy or return.

An amendment may be allowed after verdict, without setting aside the verdict, if the matter of the amendment could in no way have affected the questions submitted to the jury.

WRIT OF ENTRY, to recover several tracts of land in Somersworth. Plea, the general issue.

The lands demanded were formerly the property of George D. Varney, and it appeared in evidence that the plaintiff, on

the 28th of April, 1828, attached them on a writ against Isaac Wendell and said George D. Varney; and that, having recovered judgment against Wendell & Varney on the second Tuesday of December, 1834, he, on the 17th of the same month, caused his execution to be extended on the premises so attached. The plaintiff relied upon this levy as showing a title in himself.

The officer's return, after stating the appointment of an appraiser by the creditor, and another by himself, set forth that "the debtor within named" being notified, neglected and refused to appoint an appraiser, and that he thereupon appointed B. W. for him. The defendant excepted, that it did not appear that George D. Varney had been notified and requested to appoint an appraiser, or that one was in any way appointed for him; but the evidence was admitted, subject to the exception.

It appeared, from the return, that the appraisers were sworn to appraise such lands as should be shown them as the property of said Varney; and the plaintiff moved that the officer who made the extent might have leave to amend his return by inserting, "said Geo. D. Varney," instead of, "the debtor within named;" in support of which he filed an affidavit of the officer, stating that Varney was in fact notified. The counsel for the defendant objected, and offered to show, in behalf of a third person, that since the levy he had purchased the premises of the defendant.

On the part of the defendant, it appeared that certain persons, having demands against said Geo. D. Varney, caused the premises to be attached on the same, 28th of April, 1828, prior to the attachment of the plaintiff—that they obtained judgments, and duly levied their executions on the 10th and 11th of February, 1829, being within thirty days after judgment—that they afterwards conveyed their title to one Ebenezer Yeaton, who gave his notes for the amount of the debts—that Geo. D. Varney quitclaimed to Yeaton, who at the same time executed a writing, promising to convey to the

defendant, who is the father of George, if he should pay the money within a year—and that Yeaton did convey to the defendant, on the 18th February, 1830.

The plaintiff contended that, Geo. D. Varney had in fact redeemed the lands from the levy of those creditors, and that the arrangement by which they were conveyed to Yeaton, and by him to the defendant, was entered into for the purpose of covering the property from other creditors ; and he introduced evidence to show that during the time Yeaton held the title, and afterwards, George D. Varney took an active part in cultivating and leasing the lands, and offering them for sale—that he in fact delivered the money to Yeaton—and that he was possessed of considerable money a short time before the attachment.

He also offered evidence that said George failed on said 28th of April, and that certain other lands of George, with certain personal property which had belonged to him, were conveyed by him to other persons, without any consideration, and were by them soon after transferred to the defendant under circumstances indicative of fraudulent collusion between him and said George.

To the admission of this evidence the defendant excepted ; but the court overruled the objection, and instructed the jury that other fraudulent transactions, between George and the defendant, about the same time, had a remote bearing, and would cast a suspicion upon the case, and were therefore to be weighed ; and the jury were instructed to find, from all the evidence, whether the amount of the debts of the other creditors, who levied and conveyed to Yeaton, were in fact paid by G. D. Varney, and the land conveyed to the defendant to cover it from creditors.

The jury found a verdict for the plaintiff, and the defendant moved for a new trial.

*Christie*, for the defendant, in support of the objections to the admission of the evidence, cited 6 *Greenl.* 386, *Flagg*

vs. *Willington ;* 14 *Mass. R.* 245, *Bridge* vs. *Eggleston ;* 3
*Fairfield R.* 515, *Howe* vs. *Reed ;* 12 *Pick. R.* 89, *Foster* vs.
*Hall*—and to show that the extent was defective, 7 *Greenl.*
146, *Means* vs. *Osgood ;* 6 *Greenl.* 106, *Howard* vs. *Turner ;*
5 *N. H. Rep.* 520, *Rix* vs. *Johnson ;* 2 *N. H. Rep.* 495,
*Mead* vs. *Harvey ;* 14 *Mass. R.* 20, *Williams* vs. *Amory ;*
15 *Pick. R.* 23, *Litchfield* vs. *Cudworth ;* 17 *Mass. R.* 299 ;
9 *Mass. R.* 92–96 ; 11 *Mass. R.* 163 ; 2 *Mass. R.* 184 ; 15
*Pick. R.* 28 ; 3 *N. H. Rep.* 45, *Libbey* vs. *Copp ; Ditto* 86.

*Bartlett, Hale & Woodman,* for the plaintiff, cited 2 *N.
H. Rep.* 222, *Lovell* vs. *Briggs, and cases there cited ;* 3
*Fairfield* 515, *Howe* vs. *Reed ;* 14 *Mass. R.* 245, *Bridge* vs.
*Eggleston ;* 12 *Pick. R.* 89, *Foster* vs. *Hall ;* 6 *Greenl. R.*
162, *Breck* vs. *Hardy ;* 1 *Greenl.* 198, *Daggett* vs. *Adams ;*
10 *Pick. R.* 68, *Springfield* vs. *Co. Com'rs of Hampden ;* 4
*Greenl.* 230, *Waterhouse* vs. *Gibson & a. ;* 1 *Shepley* 111,
*Wing* vs. *Burgess ;* 1 *Shepley* 154, *Bugnon* vs. *Howes ;*
*Ditto* 407, *Thompson* vs. *Oakes ;* 3 *Fairf.* 520, *Sturdivant*
vs. *Sweetsir ;* 1 *Fairf.* 100, *Sturdivant* vs. *Frothingham ;*
4 *Greenl.* 372, *Russell* vs. *Hook ;* 2 *Greenl.* 232, *Gorham*
vs. *Blazo ;* 7 *Greenl.* 14, *Bamford* vs. *Melvin ;* 3 *Greenl.*
29, *Sawyer* vs. *Baker.*

PARKER, C. J.   The evidence of other fraudulent transfers
of property from Geo. D. Varney, which came into the hands
of the defendant soon after, under circumstances indicative
of fraudulent collusion between them, was properly admitted.
Fraud is usually shown by circumstantial evidence, and often
cannot be exposed by direct testimony.   Evidence tending
to show a fraudulent purpose and intent on the part of G. D.
Varney, and the defendant, about the time of the failure and
of the subsequent conveyance of the property in question to
the defendant, would render it probable that the conveyance
was made under the influence of that intent ; and the evi-
dence to show other fraudulent conveyances, by G. D. Var-

ney, through other persons, to the defendant, about the time of his failure, had a legitimate tendency to show such an intent and purpose.    Such evidence might well lead to a probable belief that the transfer of the lands now in question had been made to cover them from creditors, in further execution of the fraudulent purpose ; and the conviction might be more or less strong, as the evidence rendered it more or less clear that the fraudulent intent existed in relation to other portions of his property.    14 *Mass. Rep.* 250, *Bridge* vs. *Eggleston ;* 12 *Pick. Rep.* 89, *Foster* vs. *Hall ;* 3 *Fairfield's Rep.* 515, *Howe* vs. *Reed ;* 2 *Fairfield* 202, *Blake* vs. *Howard ;* 2 *N. H. Rep.* 223, *Lovell* vs. *Briggs.*    How far the evidence tending to show that the other conveyances were in fact fraudulent, was satisfactory ; and if that was proved and the intent shown, what weight it should have, in connection with the other circumstances, to show fraud in this particular case, was for the consideration of the jury.

The next question is, whether the officer's return shows a valid extent by the plaintiff.

Extents have been held void, where the appraisers were described only as "indifferent, discreet men, freeholders of said county," it not appearing that they were residents of the county; 5 *N. H. Rep.* 520, *Rix* vs. *Johnson*—where the appraisers certified that they had faithfully and impartially appraised, &c. and "set off the land in full satisfaction of the execution, with the officer's fees, and incidental charges of levying the same," there being no statement in any part of the return at what sum it was appraised ; 2 *N. H. Rep.* 495, *Mead* vs. *Harvey*—where the return stated that the appraisers were freeholders, but did not state that they were residents in the county ; 3 *N. H. Rep.* 45, *Libbey* vs. *Copp*— where it stated that they were freeholders in the county, only ; *Ditto* 85, *Simpson* vs. *Coe*—where the officer returned that the debtor being absent he chose an appraiser for him ; 4 *N. H. Rep.* 548, *Woodward* vs. *Gates*—where it did not appear by whom one of the appraisers was chosen, ("A. L. who was

chosen for the debtor within named") *Cogswell* vs. *Mason*, *Straff.*, *Dec. T.* 1837 (9 *N. H. Rep.* 48)—where the sheriff omitted to certify that the appraisers were discreet and disinterested freeholders ; 14 *Mass. R.* 20, *Williams* vs. *Amory* —where it did not appear by whom the appraisers were chosen ; 17 *Mass. R.* 302, *Allen* vs. *Thayer*—where the officer returned that he had chosen two appraisers, " Cudworth," the debtor, having neglected to choose one, when in fact Curtis was the debtor ; 15 *Pick.* 23, *Litchfield* vs. *Cudworth*—where it did not appear that the debtor refused, or did not see cause to choose an appraiser ; 2 *Mass. R.* 154, *Eddy* vs. *Knapp*—where the officer returned that he had appointed two appraisers, without certifying that the debtor had refused, or assigning any other reason ; 8 *Mass. R.* 284, *Whitman* vs. *Tyler*—where the officer returned that he had appointed two appraisers, the debtor neglecting to choose, and it did not otherwise appear that he had been notified ; 7 *Greenl.* 146, *Means* vs. *Osgood*—*Sewall* vs. *Wallace*, *Hillsborough*, *Dec. T.* 1815, *cited* 2 *N. H. Rep.* 497—and where it did not appear that the person before whom the appraisers were sworn was a justice of the peace ; 6 *Greenl.* 106, *Howard* vs. *Turner.*

But in 12 *Pick. R.* 47, *Blanchard* vs. *Brooks*, it was held that a return that the debtor had neglected, implied notice, and was sufficient—and in *Bugnon* vs. *Howes*, 1 *Shepley* 154, the supreme court in Maine made a similar decision, overruling so much of *Means* vs. *Osgood.* So in *Sturdivant* vs. *Sweetsir*, 3 *Fairf.* 520, where the return was that the debtor refused. So in *Thompson* vs. *Oakes*, 1 *Shepley* 407, where the return was that he neglected and refused.

From the general principle that the return must show a strict compliance with all the requisitions of the statute, and from these authorities in illustration of it, the return in this case appears to be defective. The execution is against two. The officer returns that two of the appraisers were chosen by him, "the debtor within named" being notified, and having

Whittier *v.* Varney.

neglected and refused to appoint one. If this may show notice to the debtor who thus neglected and refused, there is nothing in it from which we can infer that the debtor thus referred to was George D. Varney, and not Isaac Wendell, who was also a " debtor within named."

There are other circumstances, which will be referred to hereafter, which render it probable that the officer notified G. D. Varney ; but if he did not, does this return so distinctly refer to him, that we could hold the officer liable for a false return, if Wendell was notified ? Varney's property was taken, and Varney was " the debtor ;" but Wendell was also " the debtor." Upon the face of the return it is, at least, uncertain whether Varney was the debtor who neglected and refused. If the officer was disposed to assist in a fraud, and have Varney's land set off without notice, he might have notified Wendell, and then made this return.

It has been suggested that it may be understood from the return that both were notified ; but we think the language of it cannot be applied, distributively, to each of the debtors. One, only, must have been notified. If we suppose it probable that one was Varney, that probability is not sufficient.

It has been objected, on the part of the plaintiff, that as the jury have by the verdict pronounced the title of the defendant fraudulent, he cannot except to the form of the plaintiff's extent ; but this objection cannot avail. In the first case cited in support of it, (6 *Greenl. R.* 162,) a mere *quere*, to that effect, is made. In the other, (1 *Greenl. R.* 198,) it was held that the fraudulent purchaser of the goods of a judgment debtor has no right to contest the regularity of the doings of an officer, who has seized them as the goods of the debtor, by virtue of an execution against him. But it is one thing to contest the regularity of the proceedings of an officer subsequent to a seizure regularly and lawfully made, by which the possession of a fraudulent vendee was lawfully divested, and by which the officer had the right to hold the goods as the goods of the debtor ; and another thing to contest the regularity and va-

VOL. X.        38

lidity of the seizure itself, by which the claimant is deprived
of the possession.   The defendant is in possession of the
land by a title which is good  against his grantor, and every
one else who cannot show a better.   Does the plaintiff show
a better ?  Certainly not, if nothing  passed  by his extent ;
and whether any thing did pass, is the very question at issue.
The plaintiff is not entitled to disturb the defendant, if nothing
has passed to him ; and the  defendant may, therefore, deny
that.   The defendant had a right to except to the plaintiff's
title, without showing any title in himself.   He is not in a
worse situation if he has shown one which, although *prima
facie* good, turns out to be inoperative as against a creditor
who has lawfully levied his execution.   If the plaintiff has
not lawfully levied, it is good as to him.   Furthermore ;
such exception is ordinarily to be taken before the jury have
passed upon the question of fraud, and its validity is in  no
wise dependent upon the verdict subsequently rendered.

The next question arises on the motion for leave to amend
the officer's return.   It is objected by the defendant's counsel
that no amendment ought to be allowed, because the interest
of a third person (who has purchased of the defendant since
the original suit, of which this is a  review, has  been com-
menced) will be affected by such amendment.

Without enquiring at what time that  purchase was  made
—whether between the time of the first judgment and the
institution of the review—and without attempting to ascer-
tain whether the purchaser may or may not stand in a better
situation than the defendant, in relation to the alleged fraud,
we have considered this motion upon general principles.

While it is true that every person should be  protected  in
the enjoyment of his inheritance, and that his property should
not be taken from him against his consent, without a  due
compliance with all the requisitions of the statute, (2 *N. H.
Rep.* 498 ;  15 *Pick. R.* 28,) it is also true that he ought to per-
form his engagements so long as he has the means so to do ;
and if, failing in this, his creditor has legally taken land at a

Whittier v. Varney.

fair appraisal in satisfaction of a debt, the creditor ought to be protected in the enjoyment of it, and not be subjected to the loss of the land, and perhaps of the debt also, by reason of some verbal omission in the return of the officer, where the truth of the fact fully appears, and the error can be corrected without any injustice. The reason for allowing errors in extents to be corrected by an amendment is, therefore, too strong to be overlooked or disregarded ; and in cases where no rights of third persons have intervened, and the matter is still between the levying creditor and his debtor, no injustice will be done by permitting an amendment, if the evidence is full and satisfactory that the requisitions of the statute have in fact been complied with. 6 *Greenl. R.* 106, *Howard* vs. *Turner ; Ditto* 162, *Buck* vs. *Hardy ;* 13 *Mass. Rep.* 271, *Thatcher* vs. *Miller ;* 1 *Pick. R.* 354, *Atkins* vs. *Sawyer.*

But upon the suggestion in this case that there has been a sale to a third person, a more difficult question arises ; which is, whether such amendment can be made, where the rights or interests of third persons have intervened—as, where the debtor has conveyed subsequent to the extent, or another creditor has levied his execution upon the land.

The report of *Bowman* vs. *Stark,* 6 *N. H. Rep.* 459, seems to have laid down, as a general principle, that no amendment of a creditor's extent can be allowed, after third persons have acquired an interest in the land under the debtor. All that is now recollected of that case is, what appears from the remainder of the report, that the extent was held to be sufficient without any amendment. In the abstract of *Morse* vs. *Dewey,* 3 *N. H. Rep.* 335, it is said to have been held that the execution was amendable ; but an amendment if made must have been after the plaintiff had acquired a title from the debtor, on whose land the execution was extended. It does not appear from the opinion, however, that such a point was settled ; and the case cannot, therefore, be regarded as an authority for an amendment here. It has been held, in Maine, that an amend-

ment cannot be made in such case, to affect a *bona fide* purchaser. 7 *Greenl.* 146, *Means* vs. *Osgood.* But it seems to have been admitted that if there was any thing on the record to amend by, the amendment might be made ; and in *Buck* vs. *Hardy,* 6 *Greenl.* 162, an extent against the grantor of the defendant, was amended, where it appeared from the return that the officer had chosen two appraisers, but it did not state which of them was appointed for the debtors ; and where it did not appear that the officer had given the debtors notice. If the latter case is not precisely in point, it furnished stronger reasons against an amendment than the case now before us. An amendment of a return on a writ, affecting a subsequent attaching creditor, was held to be properly allowed. 14 *Pick. R.* 28, *Haven* vs. *Snow.* If an amendment may not be allowed after a conveyance to a third person, the rule authorizing an amendment of an extent in any case will be nearly useless ; for the debtor has merely to sell and convey, in order to defeat the right to amend ; and he may readily find a purchaser, if it is understood that in all cases of a formal defect in a return, a purchaser from the debtor cannot be affected by the extent.

How far, then, ought a purchaser, or subsequent levying creditor, to be protected in a subsequent purchase, or extent? The statute has required all extents to be recorded, and all purchasers and creditors must be supposed to be conusant of the matter thus spread upon the record. If they have been so negligent as to make no enquiry or examination, and have not even knowledge that the extent is on record, or that it has any defects, they cannot certainly complain that they are prejudiced by the correction of omissions or errors of which they have no information, and upon which, therefore, they could have placed no reliance. If, on the other hand, they have inspected the record or return, and are in fact advised of its contents, there is little justice in permitting them to take advantage of some trifling omission in the return of the officer, and thus subjecting him or the creditor to the loss of

Whittier v. Varney.

the debt, in cases where, from what does appear in the return, they must have been convinced that the officer had probably performed his duty, and made in fact a valid extent, but had through inadvertence omitted to make his return perfect.

And we are of opinion that these considerations indicate the true rule on this subject. The subsequent purchaser or creditor being chargeable with constructive notice of what is contained in the record—if he has there sufficient to show him that all the requisitions of the statute have probably been complied with, and he will, notwithstanding, attempt to procure a title, under the debtor, he should stand chargeable with notice of all facts, the existence of which is indicated and rendered probable by what is stated in the record, and the existence of which can be satisfactorily shown to the court. And in such cases amendments should be allowed, notwithstanding the intervening interests of such purchaser or creditor. He must be held to have purchased, or levied, taking the chance whether the officer could in fact show that he had fully performed his duty, and subject to a right in the officer to amend, by leave of the court, upon satisfactory evidence, showing that an amendment may be truly made. The general principle reported to have been settled in Bowman vs. Stark is properly subject to this qualification.

But if there is an entire omission of anything in the return to indicate that some particular requisition of the statute has been complied with, and there is thus nothing to amend by—as, for instance, if there is nothing tending to show that the appraisers had been sworn, or that the debtor had notice, where he was entitled to it—subsequent purchasers, or creditors, have good right to regard such omission as evidence of a fatal defect. In such case, therefore, no amendment can be allowed to the prejudice of the rights of third persons subsequently acquired by purchase or levy. 4 *N. H. Rep.* 115, *Chamberlain* vs. *Crane.*

We have adopted a similar principle in relation to the

amendment of records necessary to sustain a sale of land for taxes. If the record is informal merely, it may be made perfect by amendment. If there is an entire omission of something necessary to the validity of the tax, the defect is incurable, as against third persons. *Gibson* vs. *Bailey, Sullivan, July T.*, 1838. (9 *N. H. Rep.* 168.)

Whether an amendment may be made without something in the return to amend by, where no interests of third persons have intervened, is a question which may be left for further consideration.

Testing this case by these rules, the amendment now moved may be allowed. There is sufficient in the record to render it highly probable that G. D. Varney was intended by 'the debtor' who refused to choose, although that is not to be certainly concluded from the return, as it stands. It appears by the certificate that the appraisers were sworn to appraise such estate as should be shown them as the estate of G. D. Varney ; they state that they have appraised the estate of G. D. Varney. The officer's return states that the appraisers were sworn to appraise the estate of the within named debtor. Under these circumstances, any person who purchased with a knowledge of the record might well have believed that G. D. Varney was intended by " the debtor within named." If any one has purchased with an intent of defeating the plaintiff's levy, by reason of this defect in the officer's return, it will be but a just punishment for him, should he lose what he has paid.

Since the foregoing remarks were drawn up, I have been pleased to find the general doctrine respecting the propriety of amending, fully sustained by the opinion of the supreme court in Massachusetts. 17 *Pick. R.* 106, *Johnson* vs. *Day ; Ditto* 196, *Hovey* vs. *Wait.*

But another question occurs, and that is, whether this amendment is to take effect from the time when it is allowed, or whether it relates back to the time of the levy and return. The remarks already made indicate in some measure our

opinion on this subject ; for if the amendment was to have effect from the present time only, it could not avail any thing against a purchaser who had, prior to this time, placed his deed upon the record.    Although a question on this subject is suggested, 3 *N. H. Rep.* 46, we should hardly have paused upon it, but for the case *Means* vs. *Osgood,* 7 *Greenl.* 146, where an opinion seems to have been expressed that such amendment will not relate back to the time of the registry of the extent, but will take effect only from the time of the amendment.    The authority of that case, however, is somewhat shaken by other decisions in that state. If this were so held, such amendment would certainly be an anomaly.    After an amendment of a writ, it stands as if the matter of the amendment had been incorporated into it at the time it was instituted.    After the amendment of a judgment, the execution which has before been issued upon it may be levied.    An execution may be amended after it has been levied, and the extent recorded ; 3 *Greenl.* 29, *Sawyer* vs. *Baker*—And after an action of trespass has been commenced for a levy under it.    1 *Cowen's R.* 413, *Porter* vs. *Goodman.*    So an extent may be amended in like manner.    6 *Greenl. R.* 106, *Howard* vs. *Turner ; Ditto* 162, *Buck* vs. *Hardy.*    But if the amendment did not relate back, the extent would be unavailable, and the very object of the amendment be lost.    That it was understood that such amendment related back, is apparent from the cases last cited.    If it did not, the amendments could not have availed to support the actions in those cases.    ( *Vide, also, Northwood* vs. *Barrington,* 9 *N. H. Rep.* 370.)

It seems to be the very nature of an amendment that, when made, it should relate back.    The court cannot authorize the manufacture of a new writ, or a new judgment, or execution, or return, at the subsequent date.    It is clear that the officer, after his return is made and recorded, and the return day of his execution past, cannot make a new return, and have that recorded.

Whittier *v.* Varney.

The form in which the amendment is to be made need not be considered at this time.

Where the justice of the case requires it, amendments may be made, saving the rights of third persons acquired prior to the making of the amendment. 4 *N. H. Rep.* 116, *and auth. cited.* And they may be allowed on the terms that all the costs of an action up to that time shall be paid. In some cases no amendment ought to be allowed but upon such terms. 3 *N. H. Rep.* 46 ; 1 *Cowen's R.* 413.

It has been contended that this amendment cannot be allowed without setting aside the verdict. If the matter of the amendment might have altered the decision of the jury, or the course of the trial, that would be so. But the return of the officer upon the extent was not a matter upon which the jury were to inquire. The case was tried as if the return was good—as if the amendment had in fact been made. There is nothing in the amendment which could by any possibility have affected the course of the trial. In the cases before cited from 6 Greenleaf's Rep., amendments were made after the trial, and judgment was then entered on the verdict. Amendments may be made after verdict or writ of error. *Vide auth. cited* 2 *N. H. Rep.* 323. And if they may be made in the cause itself after verdict, they may be made in matters used as evidence in the cause, where they are not of a nature to affect the finding of the jury.

*Judgment on the verdict.*