## Moore *v.* Hodgdon.

The occasional use, by a mechanic, of land near his shop for prosecuting some parts of his trade, depositing wood, &c., is not evidence of possession. But if he lay the foundation of a building upon the land, there is evidence from which the jury may find an intention of permanent occupancy, and the limits to which he intends to occupy, and a possession to that extent.

Trespass, for breaking and entering the plaintiff's close in Epping, on the 15th of May, 1845, and preventing the plaintiff from placing a building upon it.

It appeared upon the trial that the *locus in quo* is a narrow strip of land, lying on the southerly side of Lamprey river, between the river and the traveled part of the highway which comes near the bank.

The defendant, E. S. Hodgdon, is the owner of a blacksmith shop, situated between the traveled path and the river, and the land in question lies easterly of the shop and along the margin of the stream. The plaintiff had

a deed of the land, dated August 23, 1844; but it appeared, from the verdict of the jury, that his grantor never had any title to the land, nor any possession, claiming title; and it became important to ascertain which party had the earliest possession of it. It had formerly been regarded as part of the highway, and perhaps is within its limits.

On the 15th of May the defendant, E. S. Hodgdon, placed a small building upon this piece of land, about three rods from this spot, and prevented the plaintiff from placing another building on this spot, and also from placing it between that and the shop, which was the trespass complained of.

The plaintiff offered evidence, that on the morning of that day he entered upon the land, claiming title under his deed, and forbade Hodgdon from placing his building there.

To rebut this evidence the defendant proved that, for more than three years previously, Hodgdon had been in the habit of building fires upon the land for the purpose of heating carriage tires, and setting them ; that he built his fires at different distances from his shop, according to his convenience, down to or near the place where he afterward placed his building, some of them within six feet of the highway ; that, at different times, he had fuel piled up on this land for that use; and that he had, during all that time, placed carriages from time to time upon the land, some of them having been placed further from the shop than the place where he put his building on the 15th of May.

During this time he built a shed adjoining his blacksmith shop on the east, but not on the land in dispute.

There was no fence upon the land, and for many years various persons, and among others the plaintiff, had at times passed over this land to the river, to water their horses and cattle.

Moore *v*. Hodgdon.

Two or three weeks prior to the 15th of May, Hodgdon caused stones to be drawn and placed upon the land, for the purpose of a foundation to the building, which he drew and placed upon it that day; and before that day he had caused these stones to be laid into a wall along the bank of the river, for the back wall of the foundation upon which his building was afterward placed.

The court instructed the jury, that the entry of the plaintiff on the morning of the 15th of May, being made under color of title, was a sufficient possession of the land to enable the plaintiff to maintain this action, if there had been no prior possession by the defendant, Hodgdon; that the acts of Hodgdon in building fires, setting tire, and placing fuel and carriages there, might have been done under a claim of right, or because he supposed that the land was a part of the highway, and that no one would complain, because no injury was done; but that, if there had been nothing further done by him, those acts could not avail as a possession against the plaintiff, because Hodgdon had no deed, and there was no fence, or any thing to define or limit the possession on the east, and enable the jury to say how far it extended. But, when Hodgdon caused the stones to be drawn upon the land, and laid into a wall, with the intention of placing a building upon it, there was evidence to be weighed by them, to show that he claimed a right to the spot where he afterward placed the building; and that if they believed, from the evidence in relation to the prior use of the land by building fires and placing carriages on that place, and between that and the shop, and from his causing the stones to be drawn and the wall to be erected, that his intention, when the wall was built, was to assert a title to the land between the blacksmith shop and the easterly end of the wall, they might find, from the evidence, an entry under claim of title, which would give him a possession, prior to that of the plaintiff, of the land, not only

upon which he placed the building, but that also between the building and the shop.

The jury having returned a verdict for the defendant, the plaintiff moved for a new trial, on the ground of misdirection.

*Bell,* for the plaintiff, cited 5 Wend. 62; 8 do. 440; 2 Johns. 23; 10 N. H. Rep. 397; 7 N. H. Rep. 436; 1 Cow. 276; 8 Pick. 275.

*Christie,* for the defendant.

GILCHRIST, J. The plaintiff having, on the morning of the 15th of May, 1845, entered upon the *locus in quo* under a deed, must be adjudged from that moment to have been in possession of it, and entitled to maintain this action, unless the defendant can show an earlier possession; for it does not appear that either has any title.

Long before that time the defendant had been accustomed to use the land, which was very near his shop, for purposes connected with his trade; but there was nothing in his use of it that excluded others from using it also, or indicated, on his part, an intention of excluding them. His use of it was not constant, but only by occasionally going upon it to do certain work that could more conveniently be done there than elsewhere, and was such as might well have been regarded as a liberty taken with another's possession.

In the use, moreover, which he thus, upon occasions, made of the land, he did not restrict himself to visible and distinct bounds, nor was there any declaration, or other act of his, that denoted a claim of exclusive occupancy, up to any determinate limit.

Acts of this nature do not, ordinarily, amount to possession. They are equivocal, and may be repeated for a long series of years, without establishing any such thing.

*Bailey* v. *Carleton*, 12 N. H. Rep. 9; *Hale* v. *Glidden*, 10 N. H. Rep. 297; *Straw* v. *Jones*, 9 N. H. Rep. 400.

But something more than these desultory acts, and beyond this occasional and transient use and occupation of an indefinite space around the door of the defendant's shop, appears in the case, and the question is, whether there is enough to authorize the jury, in point of law, to find the defendant to have been in possession anterior to the 15th day of May.

It appears that two or three weeks before that time he caused to be carried and placed there a quantity of stones, and a wall to be constructed along the bank of the river, for a foundation to the building, which on the 15th of May he caused to be brought and placed there.

Now this is, without question, an act of possession. Its decisive character, when contrasted with the occasional going upon the land to heat the irons, or even to deposit fuel for a transient period, cannot fail to impress the mind that a possession was actually taken, and to awaken an inquiry, after the proper tokens, to denote the extent to which it reached.

But the most essential and significant feature, perhaps, is, that it furnished a limit, on one side at least, beyond which the possession did not extend, and partly inclosed a space lying in the direction in which the proposed building was to lie, over which the defendant asserted possession in an absolute sense.

How much more, and whether any more was embraced in this claim, was a question of fact, to be decided upon a review of the situation of the land, and other circumstances, indicating the intentions of the party. A jury might well infer that the defendant intended to include, in his claim of possession, all the space between the wall and the shop, from the impracticability of using the shop and the new building without the whole of the intervening ground; or, from the fact that, although the space was

not actually hemmed in by the wall and the shop, those objects sufficiently described and limited the extent of the possession, to common apprehension.

In the language of the instructions of the court, there was evidence to show that the defendant claimed a right to the spot where he afterwards placed his building; and if the jury believed, from the evidence in relation to the prior use of the land, by building fires and placing carriages near that place, and between that and the shop, and from his causing the stones to be drawn, and the wall to be erected, that he intended, when the wall was built, to assert a title to the land between the shop and the easterly end of the wall, they might find from the evidence an entry, with claim of title, which would give him a possession prior to that of the plaintiff, not only to the land where the wall was built, but to all between the building and the shop.

An entry into land is one of that large class of acts in which the intention with which they are performed is the material element that gives them their legal force and character. The pursuit of game, the occasional cutting of trees, or gathering of herbage or wild fruits, and the like, furnish no presumption that the entry is made for the purpose of taking possession; in the first place, because they are not exclusive in their character, and may well consist with like enjoyment of the land by others; and in the second place, because there is nothing in such proceedings that indicates the limits of the country embraced in the occupation. But it is otherwise where one enters under a deed, which defines his claim, or where one, by a fence, attempts to exclude others, or where, by the particular use which he makes of the land, he indicates with precision the extent to which he proposes to enjoy it, to the exclusion of others.

The surrounding of the land, by a wall or fence, which is the common symbol by which actual occupation

is distinguished from the constructive possession which results from an entry under color of title, owes its efficacy to the indication it affords of the exact purpose of the party who makes the entry. It denotes a purpose of exclusive occupancy, and at the same time shows precisely what he intends to embrace in such occupancy. It is not because such fence actually excluded aggression, but because it indicates a purpose to do so, that the actual occupancy is held to extend to the limits which the fence marks. The conclusion, therefore, is, that any thing other than a fence, that shall answer the same purpose of defining the possession, and of indicating an intent, on the part of the occupant; to exclude others from partici- pating in the occupancy, may have the same effect in law. of establishing the fact of possession in distinction from the state of occasional intrusion and partial and qualified use. *Smith* v. *Hosmer,* 7 N. H. Rep. 436; *Hale* v. *Glidden,* 10 N. H. Rep. 397.

We think, therefore, that the evidence was such as might well have justified the jury in finding the defend- ant's possession prior to the 15th of May, because it showed a purpose, on his part, of permanent occupancy of a part, and tended to show a purpose of embracing all the intervening space in his claim, and exclusive occu- pancy.

The instructions were, therefore, correct, and there must be

*Judgment on the verdict.*