## HUNTINGTON v. BURT.

Where a return of an execution described the land set off as lot No. 10, and as containing 160 acres, but, in describing it by courses and distances, omitted the third course, through a mistake of the officer in copying the surveyor's minutes, so that one half only of the lot was comprehended by the three lines laid down, it was *held*, that sufficient appeared in the return to amend by, and that the officer might amend accordingly.

WRIT OF ENTRY. Pending the action the demandant moved the court to permit the officer and appraisers to amend the return of the levy of an execution in the name of *Leonard Bisco* v. *Bellows, Redington & Co.*, upon the real estate of Bellows.

The return described the land as follows: "Beginning at a stake and stones, the northeast corner of lot No. 10, in the fourth range, first division; thence south, 28 deg. west, 170 rods, to a stake and stones, the southeast corner of the same lot; thence north, 60 deg. west, 160 rods, to a birch, the original corner; thence south, 60 deg. east, 160 rods, to the first mentioned bound, containing 160 acres, it being lot No. 10, range 4, in the first division in said Franconia."

The amendment desired was to supply the alleged omission of the third course in the description, by inserting, before the last course above recited, the words, "thence north, 28 deg. east, 170 rods, to a tamarack." Albro L. Robinson, the officer who levied the execution, exhibited a description made by the surveyor employed to run out the land shown to the appraisers, which was intended to be copied in drawing the certificate of appraisal, and which was copied in all respects, except the accidental omission of the third course, as he testified. The land, as described in the paper referred to, was, as he testified, the land shown to the appraisers, and by them appraised, and

the same which was intended to be set off upon the execution.

The affidavits of the appraisers and of the surveyor were to the same effect. The demandant claimed the land under the levy.

On the other hand, it appeared that Bellows had, subsequent to the levy, conveyed to Kennerson, who conveyed to the tenant, with warranty, "the lot of land in Franconia, numbered 10, in the 4th range," and the tenant conveyed the same in mortgage to the F. I. Factory Co., who had no notice of any mistake in the levy.

*Bellows,* for the tenant. The amendment cannot be made to affect the rights of persons who have acquired a title subsequently. 3 Pick. 445 ; 3 Cow. 42.

The only exceptions are where the defects sought to be cured are merely formal, as in sales for taxes, and where it seems probable that the requisitions of the law may have been complied with. *Gibson* v. *Bailey,* 9 N. H. Rep. 168 ; *Whittier* v. *Varney,* 10 N. H. Rep. 291.

Enough appears to show that all was properly done that purports to have been done. There is a clear and perfect legal description of half the lot. Some conflict, perhaps, appears between the different parts of the description, but the levy is complete as to one half, and an amendment ought not to be allowed so as to give more.

*Hibbard,* for the demandant. *Whittier* v. *Varney* settles this case. The mistake consists in omitting the mention of a side line of the lot, of which the levy states the whole was set off.

Woods, J. It has been held that an amendment, made by an officer of his return on a writ, cannot affect the rights of persons not parties to the proceedings, who have acquired an interest in the property before the amend-

ment, and without notice of the error. *Hovey* v. *Wait*, 17 Pick. 195; *Emerson* v. *Upton*, 9 Pick. 167; *Means* v. *Osgood*, 7 Greenl. 146.

The doctrine of *Whittier* v. *Varney*, 10 N. H. Rep. 291, is, that where there is any thing to amend by; that is, where there is, upon the face of the proceedings, that which shows that probably to have been done which it is sought by the proposed amendment to indicate more clearly and with more exact formality, there is no injustice in allowing the amendment. On the contrary, the injustice would be in refusing an amendment to confirm a title, sufficiently notified upon the public record, to put parties upon their inquiry, and to charge with a sinister purpose one who, with such indications of a compliance with the legal requirements, should purchase of the prior owner. The language used in that case is this, "If they (the purchasers) have inspected the record, or return, and are in fact advised of its contents, there is little justice in permitting them to take advantage of some trifling omission in the return of the officer, and then subjecting him or the creditor to the loss of the debt, in cases where, from what does appear in the return, they must be convinced that the officer had probably performed his duty, and made in fact a valid extent, but had, through inadvertence, omitted to make his return perfect."

In *Haven* v. *Snow*, 14 Pick. 28, the amendment was made by the contemporaneous memorandum of the officer, and was justified by the constructive notice of the attachment, with which the party whose title was defeated by the amendment was charged. The present case differs in some respects from those which have been cited. But it seems, nevertheless, to admit the application of the same rules; and if there is, in the sense that has been indicated, any thing to amend by, there seems to be no objection to allowing an amendment to be made.

By the omission of any description of one of the side

lines of the lot No. 10, the third course described in the return becomes a diagonal line, extending from the third monument named to the point of beginning. This line is very clearly denoted by the monuments which terminate it, and which control the course and distance which are inserted as description. But if we look at the line as described by its course and distance, we find that it is parallel to the second line laid down in the description of the land, and of about the same length with it. We also find that the four lines would embrace a tract of one hundred and sixty acres, which is the quantity denoted in the return, and that that tract is identical with the lot No. 10, which is the same that the return assumes to set off and convey to the creditor in satisfaction of the execution.

It would be difficult for one reading this return for the purpose of ascertaining what land was comprehended in it, not to perceive that it was probably the intention of the officer and of the appraisers to set off the whole of lot No. 10, and not a triangular half of it, described by a rigid application of the technical rules which have been settled for the purpose of reconciling conflicting descriptions. It is difficult to suppose that a purchaser, informed in general terms of the liability of these returns to be amended for the protection of public officers, could have been misled by the record as to what the parties really intended to embrace in the levy. Indeed, it would be easy to believe that in taking the conveyance of the land such purchaser might have intended to take advantage of a mistake, to the prejudice either of the creditor or of the officer. We are, therefore, of the opinion that the case is one in which the court may, without prejudice to any one, inquire as to what was in reality done by the officer and the appraisers; what land was shown to the appraisers, and what land did they appraise, to be of the value of the sum satisfied upon the execution?

The result of the inquiry is, upon the evidence which

has been submitted, perfectly clear. There can be no doubt that the whole of lot No. 10 was intended to be comprehended in the levy, and that the discrepancy in the parts of the description is due to the omission in copying the third course, as laid down in the minutes furnished by the surveyor.

It has been urged, in the argument for the tenant, that the cases in which amendments have been allowed, have been these in which, but for the correction of the error, nothing would pass by the levy or public sale; that in the present case the proceedings were sufficient to pass one half the lot. But the general policy which accords to public officers, in the discharge of their functions, this kind of protection, would be but imperfectly satisfied if such a distinction were to prevail. If, through a clerical error of the officer, the creditor has been made to take one half the lot, where he would have been entitled, but for the error, to the whole, the officer would as clearly require the protection of this rule of practice, as if, by a like error, nothing whatever had passed, and the creditor so deprived of the benefit of the levy.

We are of the opinion that the amendment should be allowed.

*Leave to amend the return.*