# SMITH *vs.* HOSMER.

A BRUSH fence, maintained near the line between the possessions of two adjoining owners, but not continued at all times in the same place, is not evidence of an adverse possession, so as to bind either party to the line usually occupied by such fence.

Where adjoining owners had, in different places, built permanent fences, on what was supposed to be the true line between them, and each had occupied for more than twenty years up to such fences—this does not entitle either party to hold, by adverse possession, upon another part of the same line, where a temporary fence had been kept up, varying from the line of the permanent fences.

But such permanent fences furnish evidence tending to show an agreement of the parties to establish a direct line between them, on the line occupied by such fences; and this evidence may be left to the jury, with other circumstances, upon the question whether such agreement has in fact been made.

TRESPASS *quare clausum fregit.* The defendant pleaded the general issue, and filed a brief statement that the *locus in quo* was his soil and freehold, and a verdict was taken for the plaintiff, by consent, subject to the opinion of this court upon the following facts.

The parties own land adjoining each other, in Walpole, and both derive their title from Benjamin Bellows; and the deeds through which the plaintiff derives his title appear to cover the land in controversy.

The defence was that the plaintiff, and Jonas Hosmer, who

was the immediate grantor of the defendant, had agreed upon the boundaries between them, and that said Jonas, for more than twenty years prior to February 13, 1834, when he conveyed to the defendant, had been in the quiet, peaceable adverse possession of the land in question.

Upon this point it appeared, that about forty years since there was a log fence, commencing on the westerly line of the farms of the plaintiff and defendant, and extending easterly, in the direction of the line between them, about fifteen or twenty rods; and in continuation of that was a Virginia fence, running about twenty rods farther, to a bank, near a brook. The defendant's father, Jonas Hosmer, occupied and cultivated upon the northerly side of this fence, by ploughing, and mowing, and the plaintiff had an orchard, and cultivated upon the southerly side. The lands upon both sides were cultivated up to the fence, with the exception of about a rod in width, which had grown up to bushes.

At the westerly end of the log fence was a maple tree, which, it was in evidence was said, by Thomas Parker, the plaintiff's grantor, when he was in possession, to be the corner between him and Hosmer, and the plaintiff, more than twenty years ago, spoke of it as the corner.

About twenty years ago a cider-mill was built on the northwest corner of the plaintiff's land, at the westerly end of the log fence, by the plaintiff and said Jonas Hosmer, for their use, each contributing a share of the expense, enough of the fence being taken away for the purpose; and the plaintiff afterwards said the mill was on the line; and the remaining portion of the fence was afterwards treated as the line between the parties.

From the edge of the bank, at the easterly end of the Virginia fence, for about thirty or forty rods, a slash and brush fence has been kept up more than forty years, as hereafter stated.

Easterly of this, and on a line with the log and Virginia fences, was a wall, extending about twenty-five rods, which

has existed more than forty years, and was made upon the spot where a fence formerly stood. It was built before the plaintiff purchased of Thomas Parker in 1799; and said Thomas Parker and the plaintiff, on one side, and said Jonas Hosmer and the defendant on the other, have occupied up to this wall, by pasturing, ever since it was built.

Still farther east is a tract of woodland, extending about fifty rods, to the easterly line of the lots. It did not appear that any fence had ever been built between the parties through this tract.

The line of the deeds was northerly of all the aforesaid fences.

The controversy between the parties was respecting the line laong or near the brush fence. This fence had not been kept at all times precisely in the same place. It run in the general direction of the other fences, but varied a rod or more from the line of the other fences forty years since, curving, near the westerly end of it, to the north of a line from the log fence to the wall, and terminating northerly of the west end of the wall. It was straighter forty years ago than it has been lately, being now in some places perhaps two rods farther north.

This fence was the only one kept up between the parties along that part of the line between them.

There was a growth of wood along the greater part of this fence, and on both sides of it, terminating at a point towards the wall, and increasing in width on both sides until it came to the bank near the Virginia fence.

Said Thomas Parker, and said Jonas Hosmer, repaired this fence at different times before Parker conveyed to the plaintiff, and it has since been kept up by the different parties.

Wood has been cut from this place from time to time, by the plaintiff and the Hosmers, until it has been nearly cleared off, some of the trees having been cut within two years; but there was no evidence that either ever cut upon the side of the fence occupied by the other.

The plaintiff pastured on his side ; and it appeared that the wood was so cut away, more than twenty years ago, that in some places the grass had got in nearly up to the fence.

Hosmer had a mowing lot and pasture on his side of the fence, and in some places mowed near it, but not within a rod in any place twenty years since.

The trees having been cut away from time to time along nearly the whole extent of this brush fence, in June, 1834, the plaintiff erected a fence two or three rods northerly of it, on the true line according to the deeds, and the defendant took up the fence so erected, which is the trespass complained of.

*Handerson*, for the defendant. The defendant's title to the *locus in quo* is founded on a long and uninterrupted possession, with a knowledge and consent of the plaintiff, and the persons under whom he claims.

The material facts are, That for more than forty years there has been an admitted corner, at a certain maple tree, where the cider-mill was built, and a wooden fence extending east to the brow of the hill. On this line is Smith's orchard one side, and improvements of Hosmer the other ; and so it has been, and a wooden fence there, more than forty years. Passing the brush at the brook, a distance of twenty or thirty rods, and in the same line with the wooden fence, has been a stone wall more than forty years, and the wall was built where a rail fence had before stood. The wall extends about twenty-five rods, and the owners have cleared and improved up to it, and acknowledged it to be the true line since long before the wall was built. And as regards this piece, about which the controversy arises, there had been, from thirty to forty years, a pole or brush fence, extending from the end of said wooden fence, and in the same direction with it to the end of the wall. This fence has always been kept up, and no doubt was intended to be

in a direct line from the other fence to the wall, though it varied a little from a true line in some places,—some of the witnesses stated a rod or more. But its general direction was the same as the fences at each end of it, and it connected with them. This brush fence the owners on each side had from year to year, helped mend, and keep up; and as far as their acts could go, admitted it to be the dividing line, and exercised all the possession that the land was capable of. On Hosmer's side certain nooks of his mowing run within a rod of this brush fence. There can be no doubt that the parties have always claimed a straight line from the wooden fence to the wall. They so considered their line to be; and in settling questions of this sort it is always an important enquiry, to what line do the parties claim?

The plaintiff claims to hold according to the line given by his deed; and he puts the fence, the removing of which is the supposed trespass, on that line. How is he to connect this fence with any thing else? It will not be contended that he can hold all through the line as he has run this fence, for the improvements have been such against the wall, and against the fence from the cider mill to the brow of the hill, that this possession cannot be changed, and the fence and wall removed. The plaintiff runs this fence opposite this piece of brush, on what he calls his line of title; but he cannot connect the ends with any thing. How is he to connect this fence with the wall at one end, and the old wooden fence at the other? Will he run at right angles from the ends of this fence, or will he follow the edge of the clearing—the outer edge of this brush? If the latter, the fence he erected is without the line he can claim to, because it was built where the land has been long cleared. After establishing these two pieces of the line, on each side of this brush, and proving the occupancy and improvement long enough to give a title that cannot be controverted, it necessarily follows that the wall and the old wooden fence must be connected by a direct line. And we

should be bound to presume this line agreed to by the parties, even if they had done nothing through the piece of brush tending to show the line in one place or another. At any rate, very little evidence would be sufficient for the purpose. When it appears they have kept up the fence, and occupied on each side of it, in the manner proved, they have established this line as perfectly as that where the stone wall is, and a direct line from these two pieces of fence is the true line to which the parties must hold.

Should the court determine, that instead of this the line should be as the fence has run, the only difficulty would be to show its exact location. But in either event the *locus in quo* is part of the defendant's land.

In support of our views of the case we refer the court to *Stearns on Real Actions*, 38 *and* 43; 2 *Green.* 242; 1 *Mass.* 483; 4 *Mass.* 416; 11 *Mass.* 298; 3 *N. H. R.* 49; *ditto* 23; 1 *Johns.* 157; 2 *Johns.* 23; *ditto* 234; 3 *Johns.* 269; 10 *Johns.* 477.

*Wilson,* for the plaintiff.

PARKER, J. The case finds that the deeds, under which the plaintiff claims, include the tract of land in controversy —and he is therefore entitled to recover damages for the removal of the fence erected by him, unless the defendant can show, either an adverse possession, or an agreement between the parties establishing a line between them different from that appearing on the face of the deeds.

To sustain the first ground, the defendant must prove a continued, open, visible, and exclusive possession, marked by definite boundaries. 1 *Mass. Rep.* 483, 488, *Prop'rs of Kennebeck Purchase* vs. *Call;* 4 *Mass.* 416, *Same* vs. *Springer;* 2 *Green.* 242, *Little* vs. *Libby;* 1 *Johns. R.* 158, *Brandt* vs. *Ogden;* 10 *Johns.* 477, *Doe* vs. *Campbell.* It is not sufficient that the defendant may have had actual possession, for possession is presumed to be in subordination to the title of the legal owner, until the contrary is

shown.   3 *N. H. R.* 49, *Lund* vs. *Parker.*   Nor is it suffi-
cient that a fence may have been maintained between the
parties for convenience merely, and not intended by them
to fix with precision the limits of their several claims.   11
*Mass.* 298, *Burrell* vs. *Burrell.*

In 2 *Johns. R.* 230, *Jackson* vs. *Schoonmaker*, it was
held that making what is called a possession fence, by fell-
ing and lapping trees one upon another round the land, was
insufficient to show an adverse possession.   Chief-justice
Kent there said—" This mode of taking possession is too
loose and equivocal.   There must be a real and substantial
enclosure, an actual occupancy, a *possessio pedis*, which is
definite, positive and notorious, to constitute an adverse
possession, when that is the only defence, and is to coun-
tervail a legal title."   And this doctrine is recognized 7
*Wendell* 65, *Jackson* vs. *Warford.*

It is very clear, that the evidence offered by the defendant
did not prove an adverse possession along the part of the
line in dispute between the parties.   The only fence kept
up between them was a brush fence ; and although the par-
ties seem to have cut wood from the land on their respec-
tive sides of the fence—and there is no evidence that either
ever cut upon the side occupied by the other—still this
fence must have been kept up merely for the convenience
of the parties ; for the evidence shows that it was not at-
tempted to be kept precisely in the same place, but varied
from time to time ; and the defendant's counsel admits that
should we determine that the line between the parties must
be established according to this fence, it would then be diffi-
cult to show where the line is in fact.   The fence could not
have been considered by either of the parties as marking
the extent of their rights.   Varying from time to time, as
it did, it was not a definite boundary, nor did it mark an ex-
clusive possession.

But the defendant contends that the line should be run
straight from the fence on the west to the stone wall.   There

is no pretence for this upon the ground of adverse possession, for the defendant has had no possession whatever up to any such line.   On the contrary, it is conceded that the plaintiff has had the undisturbed occupation to a greater or less extent beyond such a line, varying in different places, and at different times, but existing at all times northerly of such straight line between the permanent fences easterly and westerly of the place in dispute.

Nor can the fact that the parties have uniformly claimed up to the log fence on the west, and to the wall on the east, have any operation whatever in establishing an adverse possession upon the tract now in controversy.   The existence of those fences may well establish an adverse possession, on the part of the defendant, along those parts of the line where they are situated.   They seem to have existed for about forty years ; and the defendant's grantor has uniformly held and cultivated up to them, and the plaintiff and the defendant's grantor many years since expressly recognized the log fence, on the westerly end of the line, as being the true boundary of their possessions in that part.   But the defendant having no paper title which covers the tract now in dispute, those fences have no tendency to prove any adverse possession beyond the places of their existence.   Because the defendant has had adverse possession in one place along the line, that furnishes no evidence of adverse possession at another point on the line, where he has had no possession in fact, and no color of title.

The difficulty, suggested by the defendant's counsel, of connecting the fences, if the defendant does not prevail, is imaginary.

There seems to be nothing to prevent the plaintiff from claiming to the line given by his deed, easterly of the wall, through the woods.   There has been no fence in that quarter, nor any actual possession, or any thing to indicate that the parties have ever claimed any line other than that appearing by the deeds to be the true line between them.   If this

be so, the dividing line between the parties from the east end of the wall, northerly, to the line of the paper title, must be determined by the possession of the defendant. It must follow that line up to which the defendant has had adverse possession in that quarter for twenty years. The defendant is there entitled to hold so much of the land, included in the plaintiff's deed, as he can show has been held adversely for that period; and no more, unless there has been an agreement of the parties establishing the line. Perhaps under some circumstances an agreement might well be presumed that the line should run at right angles from the end of the wall.

The only other question is, whether the case furnishes evidence that the line, along the place in controversy, has been established by the agreement of the parties. 6 *N. H. R.* 107, *Sawyer* vs. *Fellows*; 7 *Cowen* 761, *Rockwell* vs. *Adams*.

If the line along the place in dispute was the whole line between the parties, this question could not arise. The evidence of the manner in which the brush fence has been maintained, would, standing alone, be wholly insufficient to sustain any such position. But this being only a part of the dividing line between the parties, the evidence respecting the establishment of the line easterly and westerly of the place now in controversy has some tendency, with the other evidence, to show an agreement between the plaintiff and the defendant's grantor to establish the line contended for by the defendant. The log fence westerly, and the wall easterly, seem to be well established as marking the divisional line at those places, but neither are on what appears to be the true line by the deeds. They are on a line with each other, and have been connected together by the brush fence for about forty years; and although this fence has not been on a straight line between them, yet as it was evidently intended for temporary convenience, and as there is no evidence that the plaintiff until recently claimed to the line he now sets up, the evidence in the case might be submitted to a

jury, upon the question whether the plaintiff and Jonas Hosmer had in fact agreed upon a straight line connecting the log fence with the wall. There is nothing very decisive in this evidence; but if the defendant wishes to try this question, the verdict may be set aside, upon terms, to give him an opportunity so to do.

*New trial granted.*