## HALE *vs.* GLIDDEN.

Where the tenant entered on land which was conveyed to him by a deed defining the extent of his grant, and reckoning the same from a certain monument, and he improved beyond these limits, under a belief that the land so improved was included in his deed—*Held*, that the tenant had no color of title to such land, and could have no constructive possession without the limits of the deed.

Enclosing land by a brush fence, and cutting wood from a wood lot where a person has no color of title, is not such evidence of adverse exclusive possession as to warrant the presumption of a grant.

The possession must be actual, permanent, and exclusive.

A plea of *nul disseizin* admits the tenant to be in, claiming title.

WRIT OF ENTRY, in which the demandant claimed to recover a tract of land, sixty-nine acres, more or less, being part of Great Lot, numbered ten in the third range in Alton, which tract was specifically set forth, and described by metes and bounds, in the plaintiff's writ.

Plea, *nul disseizin.* In support of the action, the demand-ant proved that one John Moffatt was, on the first of August, 1770, the owner of said Great Lot number ten, containing eleven hundred acres, and the demandant shew title in himself through divers mesne conveyances from said Moffatt, of two thirds, in common and undivided, of the demanded premises.

To rebut this testimony, the tenant produced in evidence a deed from the said John Moffatt to David Glidden, duly executed, dated August 1, 1770, conveying to him one hundred acres in said Great Lot number ten, beginning 200 rods from the southwest corner of a lot conveyed by said Moffatt on the same day to Andrew Glidden, thence running northerly, 188 rods ; thence easterly, 85 rods; thence southerly, 188 rods ; thence westerly, 85 rods, to the bound begun at. Also, a deed from David Glidden to Richard Glidden, his son, executed March 18, 1830, quitclaiming to him 34 acres of land, described as " being a part of the farm on which I now live." Also, a deed of the same date, from said David Glidden to the tenant, another son, quitclaiming to him 30 acres of the same farm. These two conveyances covered the whole of the demanded premises and a part of the remainder of the Glidden farm.

The defendant proved that David Glidden, immediately after taking his deed from Moffatt, entered upon the land therein described, and commenced clearing the same at a certain point which the parties agree upon as the corner bound of said land ; and within five or six years from that time extended the clearing, in an easterly direction, to the easterly side of the land demanded. This clearing did not extend to the northerly side of the Glidden farm, but included about two thirds of the demanded premises.

About the same time David Glidden, and the owner of the land lying east of the demanded premises, built a brush fence upon, or near the east line of the same ; and also on the south line of the demanded premises. Some part of

Hale *v.* Glidden.

these fences was, more than twenty years ago, replaced by the Gliddens and those who owned upon the other side, by wall, and the remainder by pole and stake fence. It appeared, also, that a brush fence was built upon the north side of the Glidden farm upon what was supposed at the time to be the line between this and the Sheafe lot ; (but whether upon the exact line, or not, the witnesses could not say ;) and continued there till the fires burnt it up, which was something like thirty years since.

David Glidden occupied the cleared portion of the demanded premises ever after clearing the same, (together with other land lying west of it in said farm) as a field and pasture, a small portion only of the demanded premises being a field ; and from that portion of the demanded premises which is not cleared, he, and his sons holding deeds under him, had hauled wood for fuel from the time of its first being taken possession of as aforesaid, until the present time.

It appeared in evidence, that they paid taxes for one hundred acres during this time, and that the farm was never measured, or the quantity of land known, till since the commencement of this suit. There was no evidence that those from whom the demandant claimed title had any knowledge of these acts of possession on the part of David Glidden or his sons.

Verdict was taken for the tenant for the demanded premises, and motion was made to set it aside, on the ground that the evidence offered was incompetent to sustain it.

*Bell*, for the demandant, cited 3 *Greenl.* 126, *Brown* vs. *Gay ;* 6 *Pick. R.* 172, *Poignard* vs. *Smith ;* 14 *Ditto* 224, *Bates* vs. *Norcross ;* 3 *N. H. Rep.* 23, *Riley* vs. *Jameson ; Ditto* 51, *Lund* vs. *Parker ;* 7 *N. H. Rep.* 457, *Enfield* vs. *Day.*

*I. A. Eastman,* for the tenant, contended that there should have been an actual entry by the demandant upon the prem-

ises before suit brought, to entitle him to recover ; and cited to this point 5 *Bur.*2830, *Beck* vs. *Phillips ;* 6 *Mass. R.* 418, *Walcott* vs. *Knight ;* 12 *Mass. R.* 285, *Brown* vs. *Nye ;* 4 *Pick. R.* 160, *Tolman* vs. *Emerson.*

Also, that the demandant has shown at most a title in only two thirds of the demanded premises, and cannot recover against the tenant who holds in common with him, except on clear evidence of ouster of the demandant from his portion of the premises. 5 *Mass. R.* 344, *Higbee* vs. *Rice ;* 7 *Wheat.* 120, *Ricard* vs. *Williams ; Stearns on Real Actions,* 40 *and* 41.

UPHAM, J. In this case David Glidden, the grantor of the tenant, had originally the title to one hundred acres of land, part of Great Lot No. 10, containing 1100 acres. This tract of land is taken from Great Lot by starting at a given point within the same, 200 rods from the south-west corner of a lot conveyed on the same day to one Andrew Glidden ; thence running certain courses and distances, to include the one hundred acres.

It is said in the argument of the counsel, that it is impossible to fix at this day the precise point from which David Glidden was to run, to establish the corner of his lot. It appears, however, that nearly seventy years since, soon after his purchase of the land, Glidden commenced clearing at a point on the plan used in the trial, marked B, as the supposed corner of his lands, and the plaintiff concedes that Glidden is entitled to one hundred acres running from that point the courses and distances mentioned in his deed. He, however, without any actual survey of his land, cultivated and improved not only the one hundred acres thus conceded to him, but extended his farm eastwardly without the limits of the one hundred acres, so as to include some fifty or sixty acres of land in addition to the quantity conveyed ; thirty acres of which land David Glidden conveyed to his son Jonathan, the tenant, on the 18th of March, 1830, which thirty acres the plaintiff demands in this writ.

Hale *v.* Glidden.

It is contended for the tenant, that his grantor having entered claiming title, and located his land, he shall hold by his deed, notwithstanding the land claimed by him extends much beyond the number of acres actually conveyed, and that the bounds of his land shall extend as far as he has indicated his intention to claim under his deed.

We are of opinion, however, that his deed gives him a title only to the quantity of land specified; and that all the land he can hold beyond the proper limits named in the deed, can be holden only by actual possession and improvement. There is sufficient evidence to show that he held *adversely* beyond the limits of the 100 acres, claiming title in himself; and twenty years actual possession will give him a title to the land thus holden. But for this purpose there must be a real and substantial occupancy of the land. The rule on this subject, as laid down by Chief Justice Kent, is that "there must be a real and substantial enclosure—an actual occupancy, which is definite, positive and notorious—to constitute an adverse possession, when that is the only defence, and is to countervail a legal title." 2 *Johns.* 230, *Jackson* vs. *Schoonmaker.* This is the doctrine generally of the New-York cases, and is recognized as sound law in the case of *Smith* vs. *Hosmer*, 7 *N. H. Rep.* 436 ; *Ditto* 457, *Enfield* vs. *Day*.

Such a possession on the part of the plaintiff's grantor extended in this case over a considerable portion of the land demanded by the plaintiff; but it seems clear that it could not extend over the whole tract, and that testimony was admitted showing a loose, uncertain claim, rather than actual occupancy of a portion of the premises demanded; and the testimony thus far was inadmissible.

It appears that the tenant's grantor occupied a portion of land, extending across the southerly end of the demanded premises; but the extent of the occupation of the demanded premises on the northerly side is uncertain.

The case finds that a brush fence was built upon the north side of the Glidden farm, on what was supposed at the time

to be the line between this and the Sheafe lot, and was continued there until the fires burnt it up, which was something like thirty years since.

David Glidden occupied the cleared portion of the demanded premises ever after clearing the same, together with other land lying west of it in the farm, as a field and pasture; a small portion only of the demanded premises being a field; and from that portion of the demanded premises which is not cleared, he, and his sons holding deeds under him, had hauled wood for fuel, from the time of its first being taken possession of by them until the present time.

The mere enclosure by a brush fence, including a considerable tract of woodland, without notice to the owner, would constitute no such occupancy as to overcome the legal title; neither would the cutting or hauling of wood from the same, as a wood lot. 1 *Cow.* 276, *Gilliland* vs. *Woodruff; Ditto* 605, *Young* vs. *Camp.*

Adverse possession is to be taken strictly. 3 *N. H. Rep.* 26; 8 *Pick.* 272, *Poignard* vs. *Smith;* 14 *Ditto* 224, *Bates* vs. *Norcross;* 3 *Greenl. R.* 131, *Brown* vs. *Gay; Stearns on Real Actions* 39.

In 1 *Cowen* 276, where the defendant had a deed of lot number four, and took possession of lot number five, adjoining, believing it to be lot number four, claiming it as such, and improving it in part, it was holden that the adverse possession did not extend beyond the actual improvement.

On the testimony in this case the plaintiff was entitled to recover a portion of the demanded premises; but the verdict was taken for the whole land claimed, which was wrong.

It has been objected to a recovery in this case, that an entry should have been made by the demandant to revest the seizin in him, before suit brought; but it has long been established law in this state, that where the grantor has the title, with a right of entry, the land will pass, although it may at the time be in the adverse possession of a third person. Regret is expressed, in *Willard* vs. *Twichell*, 1 *N. H. Rep.*

Hale *v.* Glidden.

177, that the law had been so holden here ; but it is said to have been settled too long to be now questioned.

It is farther objected, that the plaintiff shows only a title in two thirds of the demanded premises ; that the defendant is tenant in common, and the plaintiff cannot recover against him, unless an ouster is shown.

If, however, the tenant in a writ of entry does not disclaim, or plead non tenure, but goes to trial on the general issue, he thereby admits that he is tenant of the freehold. *Stearns on Real Actions* 232 ; 1 *Pick. R.* 318, *Stevens* vs. *Winship ;* 7 *Mass. R.* 30, *Pray* vs. *Rice ;* 13 *Ditto* 259, *Alden* vs. *Murdock.*

The course for a tenant in common in such case would be, to disclaim for the undivided portion he did not hold. This exception, therefore, cannot prevail.

*Verdict set aside, and new trial granted.*