26  41
71  355

## WENDELL & a. ADM'RS v. MOULTON.

Where there is evidence competent to be considered by a jury, and the court submit it for their decision, the verdict will not be set aside, although the court may be of opinion that the evidence was insufficient to prove the fact.

A jury may find a fact from slight evidence, if it be competent for their consideration.

The province of the court is limited to the determination of the competency of the evidence to be submitted to the jury. To balance the evidence, weigh probabilities, determine the credibility of witnesses, or draw inferences and conclusions from circumstances proved, belong to the jury.

A verdict will not be set aside for ambiguity in the language used by the court, when it is apparent that the jury were not misled. It is to be presumed that the jury understand the instructions given to them by the court, and if the counsel have reason to apprehend that they do not, it should be suggested at the time of the trial, in order that the judge may be more explicit.

If A., by artifice and fraud, give to B. a bond of certain lands, and B. takes possession of other lands, supposing them to be covered by the bond, and his possession is open and visible, and well known to the obligor, the bond cannot operate to defeat an adverse possession of the lands thus occupied, although the entry was by virtue of the bond.

When evidence, tending to show an adverse possession of lands, which is competent but uncertain, is submitted to a jury with correct instructions as to the law, their finding will be conclusive.

A deed of lands may be presumed by a jury, where the conduct of the parties, for a long period, has been such as can only be reasonably accounted for on the supposition that there was such deed, and the facts in evidence are not inconsistent with such supposition.

A tenant, in sustaining a claim for betterments, is not obliged to show a paper title to the premises. Any species of title, which, if valid, would be a legal one, is sufficient; and if the occupant, in good faith, supposes his title to be a legal one, whatever its character may be, the requirement of the statute is answered.

The amount to be awarded to a tenant for betterments is to be determined by their value at the time of the trial; and evidence tending to show the condition of the premises at that time is admissible.

A court may properly decline to give instructions to a jury, when the question upon which the instructions are desired, is not raised by the evidence.

WRIT OF ENTRY, brought for the recovery of a tract of land in Lyman, in this county, being part of lot No. 60, described at length in the writ. The defendant pleaded the ·

general issue, accompanied by a brief statement claiming betterments.

The plaintiffs offered evidence tending to show that John Wendell, under whom they claim, was seized of the demanded premises in the year 1807; that in that year he agreed with one James Little, who had previously made improvements upon other lands of his, that if Little would give up those improvements he would give him twenty-five acres upon any other lot of his which Little would select; that Little selected a spot upon a part of the land now in dispute, and Wendell, by an agreement between them, instead of giving Little a deed of twenty-five acres, gave him a bond to convey to him fifty acres, upon his paying for the additional twenty-five acres; and Little entered on the premises, cleared eight or ten acres, built a log house, and removed there with his family, and remained until the year 1815. At that time, Wendell called upon James Little for payment, and Little admitted his inability to pay; and it was then agreed between Wendell and James Little and his son, John Little, that James should surrender all his right under the bond to Wendell, and that Wendell should execute a bond to John, of the same land, which was accordingly done. At this time James Little had extended his clearing over about thirty acres, on the east side of a small brook, and around his buildings, and had used a tract on the west side of the brook for a sugar place; and he had cleared away some of the underbrush among the trees, so that the grass grew there; had built some log and brush fence about parts of it, and had sometimes put his hogs upon it, and it had so continued until 1821, when about three acres were cleared, since which several other parts have been cleared, the fence extending up to the mountain, which was pretty steep.

The Littles, at this time and for several years afterwards, and Wendell, apparently supposed that the bonds given by Wendell covered the land on which these improvements

were made, but it subsequently appeared, upon a survey, that the bonds covered a tract of rough and hilly land, lying east of the land on which the Littles had made their clearings, and erected their buildings, and which was good tillage land.

The defendant contended that the bond was so drawn by the fraud and artifice of Wendell. No direct evidence of fraud was offered, but the circumstances of the case, before stated in substance, were mainly relied on. No exception was taken at the argument that there was no evidence tending to show fraud, and the point was discussed by the counsel on both sides.

John Little did little or nothing upon the land, though some of his father's family carried on the land and occupied the house, and John's wife lived one summer in the house.

In the fall of 1816 or 1817, and it was the great point of controversy in which year, Wendell called for money; John was unable to pay any thing, and it was then agreed between Wendell, John Little and his brother, Joseph Little, 2d, that John should give up and assign his bond to Joseph, which was done, and Joseph made a payment on the bond.

Joseph went into possession of the property and made payments upon his bond, so that in 1820 Wendell made a deed to John, and John, in 1824, made a deed of the same to Joseph. Joseph remained in possession, extending his clearings, till he sold the property to Moulton, the defendant, in November, 1841.

The evidence tended to show that James Little, and John and Joseph Little, during the times they were respectively in the occupation of the premises, always spoke of the property as their own, and claimed it as their own, though it appeared that on some occasions on which either of them spoke of their title to the land, they claimed under the bond of Wendell, until Joseph took the deed, and that after that, Joseph claimed the land under Wendell's deed until 1837, after which he claimed it by possession.

It appeared from the testimony of the plaintiffs' witnesses, that in the month of June, 1837, Wendell gave notice to Joseph that he was going to run out the fifty acres, and other land he had sold to him and others, out of the lot No. 60, and wished him to assist; and on the ninth and tenth of June, he and a surveyor, employed by him, assisted by said Joseph, who carried one end of the chain, and assisted in making the corners, surveyed the fifty acres covered by the bond and deed of Wendell to John; and it then appeared that only a part of one of the barns and a few acres of the tillage, cultivated by the Littles, were included in the deed. Joseph Little testified that nothing had led him to suppose that his clearings were not included in the bond till this survey, and that he then first ascertained the fact; though some of his neighbors had talked that his deed would not cover his improvements, yet he had hoped and supposed otherwise.

And the evidence tended to show that when the running was completed, Joseph Little wanted to purchase of Wendell the land on which his buildings and clearings were, and which were not covered by his deed; said he must either hire or buy it. Wendell said "it is of no use to sell to you; your neighbors say all you have got is mortgaged." Little was angry and said, "Well, keep your land;" but by the advice of a friend, made an arrangement to meet Wendell the next morning, and he then asked Wendell his price for it; and Wendell named a price, which Little said was too much, and he would not give it, and no bargain was made between them; and Little then said he would hold it by possession. The plaintiffs' counsel moved the court to instruct the jury that the evidence of the interruption of Joseph Little's possession in June, 1837, was sufficient in law to prove it, and the jury were not at liberty to find against it; but the court declined so to charge, and instructed the jury that if they believed, upon the evidence, that Wendell, as agent of the owner, and in the character of owner, entered

upon the land in question, that constituted an interruption of any adverse possession of Joseph Little, (unless they should find twenty years' adverse possession already completed,) which they were not at liberty to disregard.

The plaintiffs' counsel also moved the court to charge the jury that there was no evidence on which the jury could find any transmission of possession from John Little to Joseph Little, of the land in dispute; but the court declined, and charged that they might inquire whether there was any evidence of any deed or assignment or transfer of interest from the former to the latter, except of the bond.

The plaintiffs' counsel moved the court to instruct the jury that the evidence of adverse possession for twenty years prior to 1837, was not sufficient to justify them in finding that fact; but the court declined, and referred that question as a matter of fact to the jury.

The court instructed the jury that if they should find that Little was for twenty years in the actual, exclusive occupation of the land, claiming it to be his own, though he had no title, or color of title, his possession would be adverse, for all he actually occupied; and if he was in such actual occupation, claiming under a deed from Wendell, which did not in fact cover the premises, his possession would be adverse for so much as he actually occupied. If he was so in possession, but claimed under a bond from Wendell, and intended such claim to apply to the land not covered by the bond, this would imply an admission of Wendell's title, and the possession would not be adverse; but if in this case the bond was fully performed, the possession would be adverse. This instruction was given in writing after the charge to the jury, and after the jury had retired. The writing was read to the counsel on both sides, before it was passed to the jury, and no objection was then made to the phraseology. The defendant's counsel had contended, and the court had previously charged, that the

possession would be adverse after the bond was paid, not before.

The court directed the jury, that if the Littles were led to make their claim to the land under a bond from Wendell, by any fraud or artifice of Wendell, such possession might, notwithstanding, be adverse.

The plaintiffs' counsel contended that the occupation of that part of the land west of the brook, which was awarded by the verdict to the defendant as a sugar place, was not in law such an occupation as to entitle him to hold by adverse possession. But the court instructed the jury that to entitle himself to hold by twenty years' adverse possession, the defendant must show that he has had an open, visible, exclusive, continued possession, marked by definite boundaries; and that it was not enough that he had thrown a brush fence around it, or that he had occasionally gone upon it for some particular purpose, as that he had cut wood upon it from time to time, and that it was for the jury to inquire, upon the evidence, whether the possession shown by the defendant was such as was before described or not.

The court, at the defendant's request, instructed the jury that a deed might be presumed where the conduct of the parties, for a long period, had been such as could only be reasonably accounted for on the supposition that there was such deed, and the facts in evidence were consistent with such supposition; but no such presumption could be made if it would be inconsistent with the evidence.

The defendant showed a quit-claim deed from Joseph Little of all his right to lot No. 60, dated about two years before the suit was brought; but no deed to Joseph Little, of the land in dispute, was shown, and the plaintiffs contended that no sufficient title was shown to entitle him to betterments; but the court referred to the jury the question whether the defendant and Joseph Little, during the six years before the action was brought, in good faith believed themselves to have a valid legal title to the premises.

Wendell *v.* Moulton.

The plaintiffs' counsel moved the court to charge the jury that the transactions connected with the survey in June, 1837, were evidence of an agreement of the parties to a boundary, which would conclude all claiming under them ; but the court, not deeming any question of boundary, at that point, to arise in the case, did not so charge.

The plaintiffs offered in evidence a receipt, endorsed upon a bond, purporting on its face to be from Dorothy Wendell to Joseph Little, 2d, of the land contiguous on the south to that in controversy, which had been assigned by said Little to Jonathan W. Whitney. Said receipt acknowledged the delivery of a deed, pursuant to the condition of the bond, and contained other matters. Whitney was proved to have long ago left the State, and his place of residence was unknown to the witness, who had been his near neighbor while in the State, and proved his signature to the receipt. The evidence was rejected.

The plaintiffs offered to show the present condition of the premises, with reference to the question of betterments, but the court required the evidence to be restricted to the period anterior to the date of the writ.

The jury returned a verdict for the plaintiffs for the demanded premises, except that part to which the defendant set up a title by adverse possession, which the plaintiffs moved to set aside, and a new trial granted, for alleged error in the rulings and instructions of the court.

*Livermore & Bellows*, for the plaintiffs.

I. There was no competent evidence of a transmission of John Little's possession to Joseph Little, and such must have been the view of the superior court when this case was formerly before them. The assignment of the bond, which was supposed to cover the land in dispute, avails nothing. *Ward* v. *Bartholomew*, 6 Pick. 409.

If John had anything to transfer that would avail Joseph,

it was a freehold by disseizin, and a deed is necessary to convey it. *Allen* v. *Holton*, 20 Pick. 465; *Jackson* v. *Camp*, 1 Cowen 612; *Potts* v. *Gilbert*, 3 Wash. C. C. R. 479.

There was no evidence from which the jury could infer a deed, nor was it put upon that ground.

II. The jury should have been instructed that they were not at liberty to disregard the evidence of interruption in 1837. It was so held on the same evidence in the superior court.

III. There was no competent evidence of adverse possession. The interruption was in June, 1837. The possession of the Littles up to 1820 was under a bond which they supposed covered the tract in dispute. The whole case, both on the part of the plaintiffs and defendant, went upon that ground, and the case so finds. The law, then, we say is, that such possession is not adverse.

In respect to the land actually covered by the bond, it has been so settled in this case. The general ground was, that the entry was under a contract of purchase, acknowledging the title of Wendell; and we hold that the character and intent of the entry is the same, when he erroneously supposed that the bond covered it. The purpose of the entry was the same, that is, to hold under the contract, and acknowledging the title of Wendell.

Again, we say that the court erred in instructing the jury that if the bond was fully performed the possession would be adverse. This point was not taken by counsel, or discussed on the trial; and there was no evidence of any such payment until 1820; and the jury were liable to be misled, and were in fact misled by it.

IV. There was no evidence of fraud or artifice on the part of Wendell to induce Little to take the bond. And besides, if there had been, it could have had no effect upon the character of the possession, prior to the deed or the payment of the purchase money.

V. There was no evidence of any open, exclusive occupation, marked by definite boundaries west of the brook. *Hale* v. *Glidden*, 10 N. H. Rep. 397.

VI. There was no evidence to warrant the presumption of a grant. There was nothing to aid the evidence derived from simple occupation, but on the contrary, till 1837, it was supposed the deed covered it. The decision in this case before, settles this question.

VII. The evidence of the present condition of the improvements was competent both as showing the value at the date of the writ, and also at the time of the trial, which is in fact the guide. Rev. Stat. chap. 190, §§ 5, 6. Besides, it is not a case for betterments, there having been no paper title till 1841. *Lund* v. *Parker*, 3 N. H. Rep. 52.

VIII. It was competent for the jury to find an agreed boundary, and they should have been so instructed. *Prescott* v. *Hawkins*, 12 N. H. Rep. 27 ; *Sawyer* v. *Fellows*, 6 N. H. Rep. 107 ; *Gray* v. *Berry*, 9 N. H. Rep. 473.

*Goodall & Morrison*, and *Hibbard*, for the defendant.

I. It appears from the case that " the plaintiffs' counsel moved the court to charge the jury that there was no evidence on which the jury could find any transmission of possession from John Little to Joseph Little of the land in dispute." In the brief furnished by the plaintiffs' counsel they say, " such must have been the view of the superior court when the case was formerly before it." But this point was left undecided by the opinion then given; and, moreover, a decision then could not conclude as now, because the facts are not the same. The objection must be tested by the facts as they appeared at the last trial.

In their brief, the counsel make a point that " if John had anything to transfer that would avail Joseph it was a freehold by disseizin, and a deed is necessary to convey it." But the case does not find that the court was requested to instruct the jury that John's possession could not avail Jo-

seph.   Hence it is not material to inquire how far that possession could avail him.   The verdict is not to be set aside if the ruling requested would have been erroneous. Courts will uphold verdicts when they can do so consistently with the rules of law, and especially when, as in this case, the party objecting has been in no way injured by any acts or omissions of the court.   The simple question is, was there evidence tending to show that John Little's possession, such as it was, was transmitted to Joseph ? The plaintiffs' evidence had a tendency to prove that John " gave up " his possession and rights to Joseph, who immediately succeeded to both, and held for many years afterwards.   This evidence is enough to show that the ruling asked for was properly withheld.

The defendant's evidence went further, and tended to prove a conveyance of a freehold, if John had a freehold. For it tended to prove that after Joseph took this possession he held it adversely to John till 1841 ; and adversely to Wendell, for more than twenty years before the survey in June, 1837.   Authorities need not be cited, that after twenty years adverse possession a deed may be presumed from any previous possessor who had a freehold title.   Therefore in either view, the plaintiffs have no reason to except to the portion of the charge under consideration.

II.   The charge in respect to an interruption in 1837 was as favorable for the plaintiffs as the law will warrant.   The court was asked to usurp the province of the jury and decide on the sufficiency of the testimony, in violation of the well established principle that the law is referred to the court, the facts to the jury.   The court ought not to instruct, and indeed cannot instruct, on the sufficiency of evidence. *Chesapeake & Ohio Canal Co.* v. *Knapp & al.* 9 Peters' Rep. 541 ; *Scott* v. *Lloyd,* 9 Peters' Rep. 418 ; *Pray* v. *Burbank,* 11 N. H. Rep. 291.

It was a mere question of fact for the jury whether Wendell, " as agent of the owner, and in the character of own-

er," entered upon the land in question. Nothing in the opinion given upon the former trial conflicts with this position.

The court then thought the evidence such that if the jury had found there was no interruption, the court would have set the verdict aside, and so would not sustain it. Still it is true that the facts are for the jury.

The court cannot compel them to believe the witnesses, nor to draw any particular inference from the facts testified to. If jurors will return a verdict manifestly against the evidence, the court may set it aside and send the cause to another jury. If a second jury confirm the verdict, courts will as a general rule be disposed to acquiesce in the second verdict. *Bryant* v. *Commonwealth Ins. Co.*, 13 Pick. Rep. 548. But the court can do no more than set aside the verdict. It can neither find the fact nor oblige the jury to find it. Here is no motion to set aside the verdict as against evidence. There is no reason to suppose that the jury disregarded their duty.

III. According to the case, " the plaintiffs' counsel moved the court to instruct the jury that the evidence of adverse possession for twenty years prior to 1837 was not sufficient to justify them in finding that fact, but the court declined, and referred that question, as a matter of fact, to the jury."

The language of the supreme court of the United States, before quoted, applies here also with much force. " The court ought not to instruct, and indeed cannot instruct, on the sufficiency of evidence."

The question of adverse possession is for the jury. *Jackson* v. *Jay*, 9 Johns. Rep. 102 ; *Atherton* v. *Johnson*, 2 N. H. Rep. 31 ; *Hill* v. *Crosby*, 2 Pick. 467 ; *O'Rilly* v. *O'Rilly*, 8 Met. Rep. 436.

The brief furnished by the counsel says, " there was no competent evidence of adverse possession." But the case does not find that this exception was taken. So far from it, the plaintiffs' counsel argued to the jury upon the suffi-

ciency of the evidence, and after hearing arguments on both sides, and after a charge from the court, the jury found an adverse possession. It is too late to take the objection at this time. The case does not raise it, and all the evidence necessary to its determination is not stated. Enough, however, is reported to make it evident that the objection, if made, would have been wholly unfounded. *Cilley* v. *Bartlett*, Sup. Ct. (Rockingham Co.) 1849.

We do not understand that " the whole cause on the part of both plaintiffs and defendant went upon the ground that Little's possession up to 1820 was under a bond," or that " the case so finds." The cause on the part of the plaintiffs went upon this ground, but not on the part of the defendant. The defendant's ground was, that Little possessed and claimed as owner openly and exclusively for the time required by the statute. There was much evidence to prove this. There was also evidence that on " some occasions " (that is, not all,) on which either of them spoke of their title to the land, they claimed under the bond of " Wendell." However, it was for the jury to say, upon all the evidence, what was the true character of the occupation. The court did not err in instructing the jury that if the bond was fully performed the possession would be adverse. *Barker* v. *Salmon*, 2 Met. Rep. 32; *Briggs* v. *Prossor*, 14 Wend. Rep. 227.

The case does not find that " there was no evidence of payment until 1820," or that any exception was taken, that there was not such evidence.

This question, therefore, is not to be discussed here. It is also a mere assumption without any foundation, that this point was not taken by counsel or discussed at the trial. The jury were not liable to be misled by it, and there was ample opportunity to ask for more specific instructions, if counsel supposed those given liable to mislead. The charge having been given in terms reasonably certain to men of ordinary intelligence, the court will not listen to any sug-

gestion that the jury did not understand it. *Raymond* v. *Nye*, 5 Met. Rep. 157; *Lathrop* v. *Thayer*, 12 Pick. Rep. 172; *Tyler* v. *Stevens*, 4 N. H. Rep. 116.

IV. The case does not find that " there was no evidence of fraud or artifice upon the part of Wendell to induce Little to take the bond," or that any exception was taken that there was not such evidence. It must now be presumed there was evidence tending to prove fraud. Exceptions not taken at the trial are not to be discussed. The case reports only so much of the great mass of the testimony as is necessary to a proper understanding of the exceptions taken and saved.

The plaintiffs' counsel contends that " if there had been fraud it could have had no effect upon the character of the possession." To this we answer, that a bond fraudulent on the part of Wendell " could have no effect on the character of the possession." If the jury found under the charge that Little " was for twenty years in the actual exclusive occupation of the land, claiming it to be his own," his possession was adverse, notwithstanding the existence of a bond imposed by fraud. We submit that this position is warranted by the decisions, and is manifestly in conformity with justice. The instruction in respect to fraud of course is not to be understood as a separate and full proposition by itself, disconnected from the other parts of the charge, but is to be considered in connection with them. *Jackman* v. *Bowker*, 4 Met. Rep. 236. And thus understood, what objection can be brought against it? There are decisions that if a person goes into possession under a contract to purchase, his possession cannot become adverse until he either performs the contract or surrenders the possession and begins anew. Until he does the one or the other, his possession of the property, though ever so strong and notorious, will not be adverse. But the law is now settled otherwise. " The only distinction between this class of cases and those in which no privity between the parties ex-

isted when the possession commenced, is in the degree of proof required to establish the adverse character of the possession." *Fuller's lessee* v. *Eckert & a.* 4 How. U. S. Rep. 296.

If the entry was originally of this nature, evidence that the occupant, as owner, had for twenty years an open, visible, exclusive, continued possession, marked by definite boundaries, may not alone prove the possession adverse. Where fraud is out of the question, the law requires, in addition to the evidence of adverse holding requisite in ordinary cases, proof in some way that the owner had knowledge of this possession, its character and object, " otherwise (it is said) the greatest injustice might be practiced." Now we say that when the contract under which a party entered had been obtained from him by fraud, justice does not require any further or greater degree of proof to establish an adverse holding, than is necessary when the entry was not under a contract. A fraudulent contract may not help the possession and make it adverse, if it would not be so in case there were no contract, neither shall it destroy the adverse character of the possession if without any contract the possession would appear to be adverse. In all cases the possession must be open, exclusive, notorious, and marked by definite boundaries. If such possession has existed against a fraudulent claimant, he should be presumed to have had knowledge of it, and is not fairly entitled to higher proof. A fraudulent contract is a void contract, and so is out of the way, and the case is as if there never had been any contract. Therefore the charge upon this point was sufficiently favorable for the plaintiffs, even upon their assumption that the question is the same as if the bond covered the land now demanded. Indeed, the occupation and improvement were such as would well warrant the jury in finding that Wendell had actual knowledge of the adverse holding.

V. It was properly left to the jury to decide if the oc-

cupation west of the brook was open, exclusive, and marked by definite boundaries.

The tract was used for a sugar place and for a pasture. The underbrush had been cleared away, and it was fenced so far as the nature of the ground required a fence. The fence was a substantial one—logs at the bottom and brush or poles at the top. The occupation of land in this manner, in connection with the rest of a farm, may be as actual, and as well calculated to give notice, as any other. It was for the jury. A good sugar orchard is nearly as valuable upon a farm as an apple orchard. And the ground was used both for this purpose and for a pasture. *Allen* v. *Holton*, 20 Pick. Rep. 458; *Ewing* v. *Burnet*, 11 Peters' Rep. 41; *Stetson* v. *Veasie*, 11 Maine Rep. 408; 2 Greenl. Rep. 284; 6 Mass. Rep. 229; *Dennett* v. *Crocker*, 8 Greenl. Rep. 239.

VI. The court declared the rule of law applicable to presumed deeds, in substance in accordance with all the authorities and almost in the very language of many decisions. *Valentine* v. *Piper*, 22 Pick. Rep. 85; *White* v. *Loring*, 24 Pick. Rep. 322; 1 Phil. Ev. 164; *Pritchard* v. *Atkinson*, 4 N. H. Rep. 9; *Atherton* v. *Johnson*, 2 N. H. Rep. 31; *Barnard* v. *Edwards*, 4 N. H. Rep. 321.

The general proposition was so much restricted by the qualifications, that if either party could except, it would be the tenant. The jury were not told that they were at liberty to find a deed upon the evidence before them. Yet there was evidence before them tending to prove an adverse holding of the land and an appropriation of its profits for twenty years before June, 1837. This evidence alone would have warranted the presumption of a deed.

There were, besides, other circumstances tending to prove that Little was equitably entitled to a deed, such as the facts that twenty-five acres of the land demanded were paid for as early as 1807 by the betterments on the Way place, and that the other twenty-five acres in dispute were paid

for by the Littles before 1810 ; that the payments afterwards made were intended for this land, which had before been selected and appropriated; and that the occupation and improvement of it were in the highest degree open, exclusive and notorious. By the labor of the father and of the sons, the forest was cut down, and instead of it was a valuable farm, with pasture, mowing, tillage, barns, sheds and dwelling-houses, all managed and controlled by them, without "let or hindrance" from any quarter. However, if, as we have seen, the general proposition is legally unexceptionable, no complaint should be made now, inasmuch as neither party requested the court to give more particular instructions upon the subject. Much less can the plaintiffs complain of it, for they manifestly were not at all injured by it.

The constant allusion to the opinion in the former case justifies a repetition of the remark, that this opinion is no authority except upon the facts of that case, and the present case is to be determined by the facts as they appeared at the last trial.

Here was evidence that fifty acres of the lands demanded were paid for by the Littles before 1810, that they possessed them continuously, openly and notoriously, claiming them until 1841, when the defendant purchased of them, and the fact of payment was proved by the plaintiffs' witness, as well as by others in part, and yet the plaintiffs say here was no ground to presume a deed or deeds to follow the possession. We think there was.

VII. The verdict made the ruling as to betterments of but little importance. There were substantially two issues; the first, whether the tenants disseized the plaintiffs; the second, whether, if there was such disseizin, the tenant was entitled to betterments. As to the great matter in controversy, the jury found there was no disseizin, and allowed $9,76, only, the sum allowed in the original suit. The writ of review does not allege that the judgment was erroneous

in respect to the allowance of betterments. If the ruling upon this point should be found wrong, the tenant may now remit the sum allowed. *Sanborn* v. *Emerson*, 12 N. H. Rep. 58; *Hoit* v. *Maloney*, 2 N. H. Rep. 322; *Dole* v. *Ruselvelt*, 1 Wend. Rep. 25.

An occupant may have been "in the actual, peaceable possession, under a supposed title," as well when he was mistaken as to the land conveyed, as when he misjudged in respect to the nature of the estate granted or the title of his grantor.

The claim for betterments must be by plea or brief statement in writing. The pleading should be entitled as of the first term. According to the general rule applicable to pleas entitled thus, only the rights of the party as they existed at the date of the writ, can be inquired into.

Can the tenant be allowed for improvements made after the suit? If he is restricted to that time, should not the plaintiffs be also? In an action of trespass for the mesne profits, the plaintiff may recover for any injury done the premises after the bringing of the principal suit.

VIII. The decisions in relation to agreed boundaries have no application. If the defendant failed to show that Joseph Little had acquired a good title in fee simple to the land in dispute, prior to June, 1837, the plaintiffs must have recovered, provided they made out their alleged entry and survey. A verdict for the defendant establishes the fact that Little had such title; and so are we to regard it in determining the present question. Hence it will be seen at once, no question of boundary arises.

There was no controversy where the west line of the fifty acre tract is. If there had been, and the defendant was entitled to hold no further west than this line, the running might be evidence of its situation. But upon the trial, no doubt existed where that line is, nor that the plaintiffs would recover *all* west of it, unless the defendant showed title in Joseph Little. Therefore, to give the effect to the survey

contended for by the plaintiffs' counsel, would be by parol proceedings to transfer an absolute title in fee simple from Joseph Little to Dorothy Wendell. · The decisions as to agreed boundaries do not go to this extent, and if they did, they would not be upheld a single moment.

Boundaries agreed to by adjoining owners will in many cases be presumed correct. But the persons making the agreement must be adjoining owners. If A. owning a lot, and B., owning an adjoining one, agree upon the line between them, they may be concluded by the agreement. But if in such case A. owns both lots, it is plain that he does not lose his title to either by the parol agreement. Now this is the fact here. If the defence were made out, Little owned both lots. If not made out, the defendant could hold only the fifty acre tract, the limits of which were not in dispute, and the plaintiffs all the rest. It is obvious, therefore, that the question was one of title, and not of boundary.

EASTMAN, J. In this case, several questions have been saved for the decision of this court, and we will consider them in the order presented.

The first question relates to the instructions requested to be given to the jury in regard to the interruption of Joseph Little's possession in 1837. The verdict in the case was returned, not by the consent of the parties, as we understand was the fact when the cause was before this court at a previous time, but upon the consideration and finding of the jury.

The plaintiffs' counsel desired the court to charge the jury as though the facts were all admitted, and as though the jury were to take it for granted that what the plaintiffs' witnesses said in regard to the matter was all true. But the court chose to leave the evidence to the consideration of the jury, while at the same time they gave the law to them substantially as desired by the plaintiffs. The in-

structions requested were, that the evidence of the interruption of Joseph Little's possession in 1837 was sufficient in law to prove it, and that the jury were not at liberty to find against it. The instructions given were, that if the jury believed, upon the evidence, that Wendell, as agent of the owner, and in the character of owner, entered upon the land in question, that constituted an interruption of any adverse possession of Joseph Little, which they were not at liberty to disregard. In other words, if the jury believed the witnesses, the possession was interrupted. But if, on the contrary, they did not believe them entitled to full credit, and that there was no such survey made as they testified to, or no one there representing Wendell's interest, then it would not be an interruption. From a detail of the evidence as set forth in the case, probably there could be little if any doubt, that the possession was then interrupted; still, we see no objection to the course pursued by the court in submitting the question to the jury under the instructions given. The question was one of fact, upon which the law would apply after the facts were ascertained. But unless the facts were conceded by the defendant, which does not appear to have been the case, they must be found by the jury.

The second question relates to the transmission of the possession of the land from John Little to Joseph Little. The court declined to instruct the jury that there was no evidence on which they could find a transmission, and charged them that they might inquire whether there was any evidence of any deed or assignment, or transfer of interest, from John to Joseph, except of the bond.

If there was no evidence except the bond, and we assume that to have been given in good faith, then the possession of John could not in any way avail Joseph, because John, holding under the bond, would not hold adversely; and Joseph, taking the bond and nothing else, would go into possession under that.

This point is not without its difficulty. The evidence bearing upon it we conclude was parol, since if the bond had been produced upon the trial, it would have shown for itself, when the assignment, if any, was made, and what was its character. The fact that Wendell made the deed to John in 1820, after he had received his payments, would seem to negative any assignment whatever of the bond to Joseph. If Joseph made the payments, and the bond was really assigned to him, why did not Wendell make the deed to him? It would seem quite as likely, from what is stated, that Joseph made payments to John, and that John made them to Wendell, on the bond, and thus the deed would properly come to John from Wendell; and that in reality no assignment of the bond was ever made. If that was so, then John may have given to Joseph some deed or assignment of his right in the property. If something of the kind had not taken place, and Joseph had nothing to show for his right in the property but the bond, which in the regular course of business would be given up to Wendell when the deed was given by him to John, it was certainly very unusual that Joseph should have waited from 1820 to 1824 before he took any deed from John. It would be quite as probable that Joseph should have had some kind of a title from John at the outset, before making the payments, and that he rested on that title till 1824.

The evidence also tended to show, that when in possession, Joseph Little and the others spoke of the property as their own; and we think, upon the whole, taking all the circumstances of the case together, and the length of time that the property was held adversely, that the ruling may be sustained.

The next question arises upon the request of the plaintiffs' counsel for the court to instruct the jury that the evidence of adverse possession for twenty years, prior to 1837, was not sufficient to justify them in finding that fact. The

court declined to give the instructions as desired, and referred the question as a matter of fact to the jury.

What amounts in law to an adverse possession, must have been explained to the jury, as appears by the several instructions given. The sufficiency of the evidence being for them, they could decide upon it, under the instructions of the court as to what would amount to an adverse possession.

The request was that the court should instruct the jury, not that the evidence was incompetent, but insufficient. The province of the court is limited to the determination of the competency or incompetency of the evidence to be submitted to the jury, from which they may or may not make the requisite inferences of fact; and to that extent only does the court exercise any discretion, in relation to mere questions of fact. To balance evidence, weigh probabilities, determine the credibility of witnesses, or draw inferences and conclusions from circumstances proved, belong to the jury. *Pray* v. *Burbank,* 11 N. H. Rep. 290.

The fourth question arises upon the instructions given to the jury. No exception was taken to the legal position contained in the first part of the instructions, but it is said in argument that there was no competent evidence for the consideration of the jury, tending to show twenty years' adverse possession by the Littles. An examination of the facts reported, however, shows this to be incorrect.

The Littles had possession, of some sort, from 1807 till 1841, when Joseph conveyed to the defendant; and they all, during the time they were in possession, always spoke of the property as their own, and claimed it as their own, though on some occasions, when they spoke of it, they claimed under the bond of Wendell. Twenty-five acres of land in reality belonged to James, by the exchange which took place in 1807, and had it not been for the bond then given for the fifty acres, James would have been entitled to a conveyance from Wendell of the twenty-five acres; and

if he was induced to take the bond by artifice and fraud, it ought not to interfere with his right, and those who claimed under him.

Again, if John Little made any conveyance to Joseph, other than the transfer of the bond, twenty years prior to 1837; or if the jury were satisfied that the possession was not interrupted in 1837, so that there would be twenty years between the time of the deed in 1820 and the conveyance to Moulton; in such event the possession would be made out.

We think there was evidence competent for the consideration of the jury, whatever may have been their opinion as to its sufficiency.

But the latter branch of the instructions is excepted to as ambiguous, and as having probably misled the jury. The part particularly objected to is as follows: "but if in this case the bond was fully performed, the possession would be adverse."

It is said that the phraseology should have been if the bond "had been" fully performed, the possession would be adverse. That expression would no doubt have been preferable; and were it not for the explanation given in the case, we might be led to suppose that the jury were perhaps misled, and that they might have understood the court that if the bond was at "any time" paid, the possession would be adverse. But when it is said in the case that the defendant's counsel had contended, and the court had previously charged, that the possession would be adverse after the bond was paid, and not before, and when the evidence seems to show clearly that the bond must have been paid prior to 1820, when the deed was given, we do not see how there could well be any misunderstanding about it. No objection was made to the phraseology at the time the instructions were given, although they were read to the counsel upon both sides, and probably none then occurred to any one. A verdict will not be set aside

for ambiguity in the language used by the court, when it is quite apparent that the jury were not misled. *Hannum* v. *Belchertown*, 19 Pick. Rep. 311 ; *Raymond* v. *Nye*, 5 Met. Rep. 151. It is to be presumed that the jury understand the instructions given to them by the court, and if counsel have reason to apprehend that they do not, it should be suggested at the time of the trial, in order that the judge may be more explicit. *Lathrop* v. *Sharon*, 12 Pick. Rep. 172.

Passing to the next point, we find it founded upon the directions given by the court to the jury, that if the Littles were led to make their claim to the land under a bond from Wendell, by any fraud or artifice of Wendell, such possession might, notwithstanding, be adverse.

It is now said in argument that there was no evidence of fraud or artifice, on the part of Wendell, to induce Little to take the bond. The case, however, finds that no exception was taken on the trial that there was no evidence tending to show fraud, and that the point was discussed by the counsel on both sides; and we might, in accordance with the well settled practice in this State, decline to consider the exception, as being unseasonably taken. But we will look at it notwithstanding.

On examining the facts reported, we find no direct evidence of fraud; at the same time circumstances are disclosed from which an argument could legitimately be drawn to that effect. In 1807, Wendell agreed with James Little, who had previously made improvements upon other lands of Wendell, that if Little would give up those improvements he would give him twenty-five acres upon any other lot which Little might select. Little, at that time, was entitled by the agreement to twenty-five acres, and he selected a spot upon a part of the land now in dispute. But Wendell, instead of giving him a deed of the twenty-five acres, made an agreement to give him a bond of fifty acres, upon his paying for the other twenty-five. This may

all have been perfectly honest and fair; at the same time, the question readily suggests itself, why did not Wendell give Little a deed for the twenty-five acres which were paid for, and a bond for the other twenty-five. And when this is considered in connexion with the fact that the bond, when given, did not cover the land selected, it can hardly be contended successfully, we think, that here were no circumstances and no evidence tending to show fraud. And if the bond was fraudulently given, it cannot now be used to defeat an adverse title to lands which it did not cover. The possession must have been open and visible and well known to Wendell, and if the bond was a fraudulent instrument, it could not avail either to make a title or defeat one.

The law laid down by the court, in regard to the land west of the brook, which is the next question presented in the case, was correctly stated. *Hale* v. *Gliddon*, 10 N. H. Rep. 397; *Smith* v. *Hosmer*, 7 N. H. Rep. 436. The only difficulty connected with the point is as to the evidence. Had a verdict been ordered by the court we should be inclined to hold that it must be set aside, because the character of the fence, and the nature and extent of the occupation are not certain, so far as we can judge by the report of the evidence. But the question having been referred to the jury, and they having passed upon it, they must have decided whether the possession was open, visible, exclusive, continued, and marked by definite boundaries or not. They could tell the quantity of land thus occupied, if any, and whether the possession shown was such as the court described or not. If the fence was so permanent and so definite and fixed,—which the jury could learn by the testimony of the witnesses,—as to make the possession certain and marked by definite boundaries, then the defendant would be entitled to hold it, otherwise not. The evidence was competent to be submitted to them, and whether the possession was such as the court described, the jury

Wendell *v.* Moulton.

could and must have judged.   And their verdict, under the instructions, settles the matter.

Upon the next point, also, the law was correctly given to the jury.   In considering the second point, we come to the conclusion that there was evidence competent for the jury to consider, in deciding whether John Little gave a deed to Joseph, in 1816 or 17.   If a deed was then given, it would fix the possession under claim of title, for twenty years would elapse before 1837.   That evidence, coupled with the claim of the Littles to the land from the beginning, was competent to be submitted to the jury, under the guarded explanation of the court, that no presumption could be made inconsistent with the evidence.   There can be no doubt of the correctness of the general proposition laid down by the court, and from the evidence in the cause, we can discover no injury that could result to the plaintiffs from the instructions as given.

The instructions in regard to the title necessary for a tenant to have, in order to entitle him to recover for betterments, were correct, and in accordance with the statute upon that subject.   Any person, against whom any action may be brought for the recovery of real estate may, with his plea, file a brief statement, setting forth that he and the person under whom he claims, have been in the actual peaceable possession thereof, under a supposed legal title, for more than six years before the action was commenced, and that the value thereof has been increased by them by buildings or other improvements.   Rev. Stat. ch. 190, § 6.

It is not necessary that the occupants show a paper title, as contended in the argument.   Any species of title, which, if valid, would be a legal one, is sufficient; and if the occupants, in good faith, suppose their title to be a legal one, whatever its character may be, the requirement of the statute is answered.

But we think the court erred in rejecting the evidence tending to show the condition of the premises at the time of

the trial. The object of the statute is to compensate the tenant for actual improvements made by him, and no more. And when shall that value be tested? What does justice require between the parties? The tenant continues to occupy the land until the judgment is recovered against him. It is then that the premises are surrendered; and the amount which the demandant should pay for the betterments should be their value at the time the tenant ceases to occupy. Between the time of the commencement of the action and its termination the improvements may have become materially lessened in value, and the demandant should pay for no more than what he receives. The tenant, too, occupies in good faith, and if he has really and honestly improved the premises, he should have the value of the improvements at the time he surrenders them.

The case does not show the precise finding of the jury upon the question of betterments, but we notice, by the argument of counsel, that they found the tenant entitled to $9,76, which is stated to be the same amount found upon the former trial. The plaintiffs' evidence upon this point having been erroneously excluded, the verdict must be set aside on that account, unless the tenant will remit the amount found for betterments. This he may do, if he sees fit. *Sanborn* v. *Emerson*, 11 N. H. Rep. 57.

There being no question made as to the correctness of the ruling in regard to the receipt on the Whitney bond, the only remaining matter for consideration relates to the ruling upon the question of boundary. On reading the whole case, we do not see how any question of boundary, as is often understood to exist between adjoining owners, and to which the authorities cited by the plaintiffs refer, could arise in this case. Where the lines which were run in 1837 were is not controverted. There is no conflicting evidence upon that point; nor is it in dispute that they were run according to the bond; but the great controversy between the parties is, whether the defendant can hold beyond those lines by

possession. If there was any question where those lines were, the inquiry would present another aspect; but that matter not being in dispute, and there being no pretence that Joseph Little then surrendered his right to the land beyond the limits of the boundaries, we agree with the court below in saying that we do not deem that any question of boundary arose so as to require the instructions demanded.

If the tenant shall remit the amount awarded for betterments, there may be judgment on the verdict, otherwise the verdict must be set aside.